Alan ZIENTS et al., Plaintiffs,

v.

Willard J. LaMORTE et al., Defendants,

Gertrude Aranow et al., Claimants-Appellants.

No. 599, Docket 71-2174.

United States Court of Appeals, Second Circuit.

Submitted April 4, 1972.

Decided April 18, 1972.

Joseph Aranow, Brooklyn, N. Y. (Aranow & Koppelman, Brooklyn, N. Y., of counsel), for claimants-appellants.

Alan Palwick, New York City (Burns, Van Kirk Jube & Kafer, New York City, of counsel), for defendant-appellee Shattuck Denn Mining Corp.

Before CLARK, Associate Justice,* and LUMBARD and KAUFMAN, Circuit Judges.

IRVING R. KAUFMAN, Circuit Judge:

Guidelines for the supervision of class action suits under F.R.Civ.P. Rule 23 have been slow in evolving and scant direction has been forthcoming from appellate courts. We now must decide whether a district judge supervising the distribution of a trust fund created pursuant to a settlement of a class action

* United States Supreme Court, retired, sitting by designation.

should have allowed untimely claims of five class members. These claimants concededly failed to receive any notice of the institution of the class action or notice of hearing on the settlement and their claims were made before the distribution of the fund and prior to the scheduled hearing to determine the validity of claims. We are of the view that such claims should be accepted and therefore reverse the order of the court below.

This appeal springs from two consolidated representative class actions brought by stockholders of Shattuck Denn Mining Corporation ("Shattuck") against Shattuck, its directors and some of its officers. The complaint alleged violations of the securities laws and state common law and asserted that the defendants manipulated the market price of Shattuck stock during the period December 20, 1966, to May 10, 1967, by issuing false and misleading statements to the public. The represented class consisted of those who purchased Shattuck stock during that period at an artificially inflated price and suffered a loss on subsequent sale. After lengthy negotiations, the parties executed a Stipulation and Agreement of Compromise and Settlement ("Stipulation") dated February 5, 1971.[1] On February 11, 1971, the District Court entered an order requiring Shattuck to notify the members of the class by February 17 of a hearing to be held on March 23 to determine whether the proposed settlement was "proper, fair, reasonable and adequate and should be approved by the Court and such claims dismissed on the merits and with prejudice . . . ." The order stated that the Stipulation would become operative if approved at the March 23 hearing, but made no reference to a "Proof of Claim" form or a deadline for its filing. (In addition to notice of the hearing and a copy of the Stipulation, Shattuck mailed to each shareholder of record during the relevant period a Proof of Claim form. The Stipulation provided that these forms must be returned within 45 days of the mailing— in this case, by April 3, 1971. The Stipulation ultimately was approved by a judgment entered April 6, 1971.[2])

Appellants here are five claimants named Gertrude Aranow, Rose Fried, Jacob and Judith Reiner and James Cowin whose claims were rejected on the sole ground that they were filed after April 3, 1971. Each complied with paragraph 12(e) of the Stipulation, which provided that those whose claims have been rejected may indicate an intention to contest the rejection by serving notice upon Shattuck and the Court within ten days after the rejection and by requesting a hearing thereon.[3] The requisite hearing was held on August 10 at which time the court received affidavits and heard arguments.

The five claimants-appellants contended that neither they nor their broker, E. F. Hutton, who held all their stock in street name, received notice of the settlement hearing or the deadline for filing claims. Aranow's experience is illustrative of appellants' dilemma. She discovered the pendency of the settlement proceedings only because she again had become a Shattuck shareholder and received its Annual Report on April 12 which made reference to the settlement.

1. By the terms of the Stipulation, the various defendants were to contribute a total of $600,000. Fees for plaintiffs' counsel were subsequently approved in the sum of $154,284 leaving a net fund of $445,716 for distribution. Approved claims to date total $899,702. Thus, Shattuck became a mere stakeholder in this litigation.

2. Although the February 11 order implicitly accepted the proposed notice as sufficient, it should be observed that the Stipulation was not formally approved by the court until April 6—after the deadline had passed for filing Proof of Claim forms. Thus the adequacy of the notice provision was approved after it was a *fait accompli*.

3. Paragraph 12(f) of the Stipulation gave the court power to administer the settlement plan and to decide all disputed questions of law and fact concerning the validity of claims.

She immediately wrote to Shattuck, telling it that she had received no notice of the settlement or other proceedings until she received the Annual Report. Shattuck answered her by return mail, enclosing a Proof of Claim form. The letter by James Galgano, Shattuck's Treasurer, indicated that the time to file a claim had expired, but that her late claim would be considered.[4] Accordingly, she filed her claim. But this was not the end of the correspondence. On April 21, 1971, she received a letter from Donald C. Hain, an attorney for Shattuck, in which he stated:

> Your claim has not been rejected. While we cannot pay it without permission of the Court, we propose urging on the Court that late claims (at least until the time we make application, and this would include yours) be paid if there is a reasonable excuse for the lateness.

In addition to her letter to Shattuck, Mrs. Aranow wrote to E. F. Hutton, which, it appears, also never received the April 17 notice.[5] The only feasible explanation we can offer for this failure of notice, is that Hutton moved its place of business sometime between 1967 and 1971, and the notice, mailed by Shattuck to the address listed in the corporate books in 1967, was not transmitted to Hutton's new address. When Hutton learned all this it undertook to notify its other customers who had purchased Shattuck shares between December 20, 1966 and May 10, 1967, of their possible interest in the settlement fund, and this led to the four other late claims.

Although the acceptance of these late claims was unopposed, Judge Pierce concluded that he did not have discretion to direct their acceptance and allowance.

Since Galgano's affidavit demonstrated that Shattuck had complied with the notice specified in the Stipulation,[6] Judge Pierce noted, "to the extent that claimants with changed addresses did not receive mail notice, it was due to the terms of the agreement."

We are of the opinion that this narrow view of the court's function in overseeing class actions pursuant to Rule 23 is unwarranted. Until the fund created by the settlement is actually distributed, the court retains its traditional equity powers. It is not novel law to announce that a court supervising the distribution of a trust fund has the inherent power and duty to protect unnamed, but interested persons. In the words of Professor Chafee, the dean of equity law, these individuals are akin to "wards of the court." Z. Chafee, Some Problems of Equity 292 (1950). Moreover, in this case, the Stipulation, approved by the court, vested the court with the authority to administer the settlement plan. In the order approving the plan, the court explicitly reserved "jurisdiction over the effectuation of the settlement and compromise provided for herein for all purposes including the resolution of any disputes that may arise with respect to the payment of the settlement proceeds."

Thus, we have before us several claimants who did not receive notice of the settlement or deadline for filing claims for the reasons we have stated, and yet who had *bona fide* claims but were denied participation in the fund. Moreover, allowing these five claims would result in only a miniscule reduction in recovery by timely claimants. We conclude therefore that where, as here, all the equities are on the side of

---

4. Counsel for the named plaintiffs have not opposed appellants' claims.

5. Robert Cleary, a Hutton employee, was available to testify before Judge Pierce. Judge Pierce did not hear Cleary because he was of the view that Cleary's proposed testimony that Hutton did not receive notice would not be relevant. Cleary's affidavit is part of the record on appeal and there is no disagreement over the fact that notice was not received by Hutton.

6. Pursuant to Paragraph 11(c) of the Stipulation, notice was published on two days in the New York Times and sent by ordinary first class mail to shareholders who appear on the Shattuck transfer sheets as purchasers during the requisite period.

the claimants, the fund has not been distributed and the administration of the fund would be insignificantly hampered by allowing these few late claims, appellants should be permitted to participate in the fund.

In light of our conclusion, we need not reach appellants' contentions that the notice of February 17 failed to comply with Rule 23(e) or that Judge Pierce's order denied them due process of law.

Reversed and remanded for proceedings consistent with this opinion.