John BURNS, et al., Plaintiffs,

and

Mary J. Fontana, Peter G. Polmen, and Michael Macino, Petitioners-Appellants,

v.

Richard E. ELROD, et al., Defendants-Appellees.

Nos. 83–2170, 83–2213.

United States Court of Appeals, Seventh Circuit.

Argued May 18, 1984.

Decided March 15, 1985.

Kimberly A. Sutherland, Chicago, Ill., for plaintiffs.

Randolph T. Kemmer, Asst. States Atty. of Cook County, Chicago, Ill., for defendant-appellees.

Before CUDAHY and ESCHBACH, Circuit Judges, and PELL, Senior Circuit Judge.

PELL, Senior Circuit Judge.

Petitioners Mary J. Fontana, Peter G. Polmen, and Michael A. Macino appeal from the denial of their petitions to file late claim applications to participate in the settlement of a class action. Former employees of the Office of the Sheriff of Cook County (the "Sheriff's Office") initiated the class action on March 10, 1971, seeking injunctive and declaratory relief, back pay, and reinstatement. Plaintiffs complained that the Sheriff's Office had discharged them for political reasons in violation of the United States Constitution and various civil rights statutes. The district court denied their request for a preliminary injunction and dismissed the complaint. This court reversed. *Burns v. Elrod,* 509 F.2d 1133 (7th Cir.1975), *affirmed,* 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). On remand from the Supreme Court, the district court permanently enjoined defendants from discharging or threatening to discharge employees for political reasons. The court granted plaintiffs' motion to proceed under Rule 23(b)(2) as a class action. Fed.R.Civ.P. 23(b)(2). Before the case went to trial, the parties reached a tentative settlement calling for 18 months back pay and priority reinstatement for class members. The court entered an order by stipulation of the parties, dated April 22, 1981, requiring defendants to mail notice of the proposed settlement to prospective class members before April 27, 1981. Defendants identified prospective class members by comparing a list of employees who had worked for the Sheriff's Office in December, 1970 with a similar list for December, 1972. The parties considered any employee whose name appeared on the first list, but not the second, a prospective class member.[1] This procedure generated approximately 700 names and addresses. The addresses, obtained from old payroll

---

1. The court defined the class as "all persons who were employed by the [Sheriff's Office] on December 7, 1970 and who were not protected by civil service or other laws against arbitrary discharge from employment."

sheets, were over ten years old. Because of the likelihood that many class members had changed their addresses during the ten-year pendency of the case, the order also required the parties to

immediately ascertain any later known address, if any, of each prospective class member who failed to receive the notice when mailed on or before April 27, 1981. By May 14, 1981, the defendants shall cause a second mailing to be made of the notice to each prospective class member who failed to receive the first mailing (on or before April 27, 1981) and for whom a later known address has been ascertained.

Moreover, defendants had to place two extensively detailed display-type advertisements containing information about the proposed settlement in each of the two Chicago daily newspapers. A June 5, 1981 deadline was imposed for filing claim applications.

The first wave of individual notices was mailed and the advertisements were placed in the newspapers. The post office returned over 500 of the 700 mailings as undeliverable, primarily because of incorrect addresses. Defendants failed to take any steps to update the addresses or otherwise locate the 500 prospective class members. Plaintiffs, through their counsel, attempted to contact these prospective class members through a search of Chicago-area telephone directories. Their efforts located 37 prospective class members, 30 of whom expressed an interest in filing claim applications.

Plaintiffs moved to extend the deadline for locating and contacting class members. The district court denied the motion without discussion. Defendants never mailed a second wave of notices. Following a fairness hearing, the court approved the settlement on June 26, 1981.

On May 24, 1982, nearly one year after the filing deadline had passed, two prospective class members petitioned the court to allow them to file late claims. On August 30, 1982, a third claimant filed a petition.

All three argued that they never saw the newspaper advertisements and that they failed to receive notice by mail because defendants had supplied incorrect addresses. The district court, exercising its equitable jurisdiction over the distribution of settlement funds, denied defendants' motions to dismiss and allowed the late petitions "[s]ince these petitioners did not receive personal notice by mail because of inadvertant error or inaccurate recordkeeping. . . ."

On January 25, 1983, Mary J. Fontana, Michael A. Macino, and Peter G. Polmen petitioned to file late claim applications. Petitioners alleged that they failed to receive notice of the settlement agreement by mail or through the newspapers; that in any event, the newspaper advertisements provided inadequate notice under the circumstances; and that plaintiffs and defendants failed to use reasonable and practical methods for locating class members, all in violation of the court's order of April 27, 1981. In particular, petitioners noted that defendants could have obtained their current addresses from the Office of the Secretary of State in Springfield, Illinois (the "Secretary") merely by providing the Secretary with their names and birthdates.[2]

Defendants moved to deny the petition, arguing that the court's April 27, 1981 order did not require them to approach the Secretary for current addresses and that the court would work a substantial injustice on defendants if it permitted the late claim applications. On May 31, 1983, the court denied petitioners' motion, finding "that the best notice practicable was given to the class through the diligent efforts of counsel to mail individual notices and to serve notice by publication." The court stated that plaintiffs and defendants were not required to exhaust every conceivable method of identifying potential class members, and that "adequate notice was published in newspapers of large circulation," even though "petitioners did not receive notice by mail." Petitioners Fontana and

---

**2.** Defendants do not deny that petitioners' personnel files contain this information.

Polmen appealed on June 23, 1983. Petitioner Macino appealed a week later. We dismissed both appeals without prejudice as premature. Petitioners then moved the district court to enter final judgment pursuant to Fed.R.Civ.P. 54(b). The court granted their motion and their appeals, now consolidated, are properly before us.

Petitioners contend that defendants failed to provide them with the notice required by Rule 23 and that subsection (c)(2) provides the standard by which we should measure the adequacy of defendants' efforts. Fed.R.Civ.P. 23(c)(2). That subsection states that class members must receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Defendants, they argue, failed to meet this high standard merely by placing advertisements in newspapers and by mailing individual notices to 10-year-old addresses and that this failure requires us to allow their late claim applications. Defendants reply that the requirements of subsection (c)(2) do not apply where, as here, plaintiffs have maintained their class action under subsection (b)(2),[3] and not subsection (b)(3),[4] of Rule 23. They argue that subsection (e), which states that "notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs," provides the correct—and more discretionary—standard for giving notice, and that they have more than met this standard.[5]

We initially note that, under the circumstances of this case, the standard of notice advanced by defendants—notice "as the court directs"—substantially collapses into the "individual notice" standard advocated by petitioners. When the court ordered individual notice (as well as notice by publication), it basically required defendants to do no less than that required by subsection (c)(2). *Cf. Eisen v. Carlisle and Jacquelin,* 417 U.S. 156, 173–76, 94 S.Ct. 2140, 2150–52, 40 L.Ed.2d 732 (1974) (subsection (c)(2) requires "that individual notice must be provided to those class members who are identifiable through reasonable effort"). Since the district court did not certify the class under subsection (b)(3), and since it ordered individual notice to class members anyway, we will review the reasonableness of defendants' efforts in light of the standards of subsection (e) (notice "as the court directs").[6]

While the case is a close one, we find defendants' efforts reasonable. Defendants supplied the names of prospective class members and caused newspapers to publish advertisements containing information about the settlement. While petitioners now suggest that additional avenues of inquiry might have led to the notification of even more class members, Rule 23 does not require defendants to exhaust every conceivable method of identification. Neither does the failure of defendants to send a second mailing to "class members who failed to receive the first mailing ... and for whom a later known address [had] been ascertained" prove a violation of subsection (e). While defendants could have sent written notice to the 37 class members identified through the search of phone directo-

---

3. A (b)(2)-type class action can be maintained if, among other things, "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Fed.R.Civ.P. 23(b)(2). The provision, by its terms, contemplates actions that seek equitable relief.

4. A (b)(3)-type class action can be maintained if, among other things, "the court finds that the questions of law or fact common to members of the class predominate over any questions affecting only individual members, and that a class

action is superior to other available methods for the fair and efficient adjudication of the controversy...." Fed.R.Civ.P. 23(b)(3).

5. *See also* Fed.R.Civ.P. 23(d)(2) ("[T]he court may make appropriate orders ... requiring ... that notice be given in such manner as the court may direct to some or all of the [class] members of any step in the action....")

6. The district court, in its order denying the petition, found "that the best notice practicable" was given class members, apparently assuming that subsection (c)(2) controlled.

ries, we see no great harm in defendants' omission given that these class members received actual notice by phone.

Petitioners point to *Zients v. LaMorte*, 459 F.2d 628 (2d Cir.1972), in support of their contention that defendants failed to comply with subsection (e). In that case, claimants filed late claims to participate in the settlement of a class action. Defendants had mailed individual notices to petitioners' agent, but the agent, which had moved its place of business, apparently never received the mailings. The district court concluded that it lacked discretion to allow the claims, even though defendants did not oppose them. On appeal, the Second Circuit held that the trial court could accept the late claims. It reversed and remanded, ordering the district court to permit claimants to share in the settlement fund.

 While we agree that courts have discretion to permit the filing of late claims, they should permit such claims only when the equities, on balance, favor claimants. *Zients, supra,* at 630. The *Zients* case involved unopposed claims by ascertained class members who filed their late claims as soon as they learned of the settlement. Contrariwise, defendants in our case vigorously contest the claims, petitioners are only prospective class members seeking to file claim applications, and petitioners waited between four and thirteen months from the time they learned of the settlement until they filed their petitions. Moreover, claimants in *Zients* all brought their petitions less than four months after the filing deadline. Petitioners in our case

filed more than 19 months after the deadline. Defendants are entitled to some certainty in their settlement liability and to avoid claims that trickle in too long past the filing deadline. We cannot say that the district court unreasonably drew the line at 19 months.[7] Unlike the situation in *Zients*, the equities do not all rest on petitioners' side.[8]

We note the particular contention of the plaintiffs that the defendants could easily have ascertained their current addresses from the Secretary of State who could furnish this information from the records of drivers' licenses. The fact that their own present addresses would have been revealed does not take this source of information out of the realm of considerable speculation, keeping in mind that we are concerned with whether notice of a "practicable" nature was to be given.

Drivers' licenses are not issued in Illinois annually and some of the records could have been more than two years outdated as far as addresses were concerned. Also these records pertain only to people who at the time of the license issuance were residents of Illinois. The fact that 5/7ths of those on the list of 1970 employees had moved would seem to indicate that the personnel of the office lived a somewhat transient existence. Some may long since have moved to other states. A search of the Chicago area telephone directories out of that supposedly fertile source produced only 37 prospective class members out of 500 persons. Some, of course, may have died in the meantime. It could be assumed

---

7. We see no inconsistency in the prior grant of other late petitions. Those claimants filed less tardy petitions and had stronger equitable claims. For example, one of the petitioners (who had been reinstated during the pendency of the class action) worked for the Sheriff's Office at the time notices were sent, yet defendants failed to provide a current address from her personnel file. Defendants sent the notice of another petitioner to an address at which he had never resided—Democratic party headquarters. On the other hand, petitioners in our case at least had their notices sent to addresses at which they resided when working for the Sheriff's Office.

8. Petitioners also argue that the newspaper advertisements directed potential class members to non-existent court files and that without those files, readers could not determine whether they were class members. Even, however, assuming the truth of this claim, we fail to see how it affects petitioners, who maintain that they never saw the advertisements. In any event, the advertisements provided sufficient information to signal readers about potential class membership and about how to file claims.

safely that people who had worked together in an office were not all strangers to each other, yet the 200 mailings which were mailed successfully apparently did not produce the word-of-mouth which might have been anticipated. In a situation of this sort a line must be drawn and "finish" written on the litigation at some point. The district court properly determined that the finish line had been passed.

Petitioners finally argue that denial of their claims violates their due process rights. Due process requires that class members generally must receive notice of the terms of settlement. *See Eisen, supra,* 417 U.S. at 173–77, 94 S.Ct. at 2150–52; *Simer v. Rios,* 661 F.2d 655, 666–67 (7th Cir.1981); *Johnson v. General Motors Corp.,* 598 F.2d 432, 436–38 (5th Cir.1979). Absent such notice, courts have held that the entry of judgment in a (b)(2)-type class action does not bar an unnotified class member from seeking damages in a later suit arising out of the same injuries complained of in the original class action. *See Crowder v. Lash,* 687 F.2d 996, 1008–09 (7th Cir.1982) (dictum); *Johnson, supra. Cf. Cotton v. Hutto,* 577 F.2d 453, 454 (8th Cir.1978); *Jones-Bey v. Caso,* 535 F.2d 1360, 1361–62 (2d Cir.1976). But petitioners do not seek to file a new action; rather, they belatedly want to share in the settlement pie.[9] Due process does not require this under the circumstances of this case.

The order of the district court denying the petition to file late claim applications is

AFFIRMED.

CUDAHY, Circuit Judge, dissenting.

The majority finds the efforts of defendants to notify petitioners about the settlement reasonable under the circumstances. I do not agree, and I respectfully dissent.

The district court, anticipating that many potential class members would by the time of the settlement no longer reside at the stale addresses provided by the defendants,

originally ordered both sides in this class action to identify any later known address for each prospective class member who failed to receive notice through an initial mailing. The court further ordered the defendants alone to mail a second series of notices to the current addresses of prospective class members uncovered through the joint effort at identification. But, even though the postal service returned more than 70 per cent of the notices as undeliverable, the defendants neither updated the addresses nor sent out a second mailing. The majority nevertheless concludes that the defendants complied with the district court order, entered under Rule 23 of the Federal Rules of Civil Procedure, and with the constitutional requirements of due process. I cannot agree.

Defendants do not dispute that they did nothing to locate and notify potential class members who failed to receive the original notices. The relatively unproductive and inefficient search of Chicago-area telephone directories by counsel for the class action representatives does not, in my mind, satisfy defendants' obligations under the order. The record fails to disclose any planned effort reasonably calculated to locate current addresses for the unnotified potential class members. Even assuming that defendants can gain vindication from the efforts of their adversaries, the search of directories produced meager results and, standing alone, was inadequate under the circumstances.

The majority dismisses defendants' failure to send a second mailing as inconsequential since the 37 potential class members who were identified received individual notice by telephone. Defendants, however, had a duty not only to notify potential class members whose current addresses were found, but also to expend a reasonable effort attempting to identify class members and their current addresses. Defendants cannot insulate themselves from the obligations of the court order to make a

---

**9.** Of course, we do not decide the issue of whether the statute of limitations on such a new claim for damages has run. *Cf. Crown, Cork &*

*Seal Co. v. Parker,* 462 U.S. 345, 103 S.Ct. 2392, 76 L.Ed.2d 628 (1983).

second mailing by ignoring the duty to identify and then arguing that no second mailing is required.

Defendants also failed to comply with the requirements of due process. Where, as here, "notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 315, 70 S.Ct. 652, 657, 94 L.Ed. 865 (1950). While defendants did not have to exhaust every conceivable method of identification, they were required, within the limits of practicability, to send such notice as was reasonably calculated to reach most interested parties. *Mullane* at 318, 70 S.Ct. at 659. Notice by publication and individual notice sent to ten-year-old addresses simply fails to satisfy this standard. The search of directories, while certainly a step in the right direction, identified only 37 out of more than 500 unnotified potential class members and should have been supplemented with other searches. Petitioners suggest one possibly fertile source of current addresses—Illinois state drivers' licenses. I do not know how many missing addresses this source would have turned up, but it exemplifies the availability of relatively effective and cheap search strategies overlooked by the defendants.

Because of defendants' failure to make a reasonable effort to notify prospective class members, I would permit the petitioners to file their late claims.