**In re Deborah CHERRY'S PETITION TO INTERVENE.**

**Grace SCHAEFER, et al., Plaintiffs,**

v.

**Philip G. TANNIAN, et al., Defendants.**

**Civil A. No. 73-39943.**

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 16, 1996.

Eleanor C. Smith, Detroit, MI, for Deborah Cherry.

John R. Runyan, Jr., Sachs, Waldman, Lucia H. Simpson, Detroit, MI, for Grace Schaefer.

Nancy J. Van Lopik, Grosse Pointe Park, MI, James M. Moore, Gregory, Moore, Detroit, MI, for Detroit Police Officers.

### MEMORANDUM AND ORDER DENYING PETITIONER'S MOTION TO INTERVENE

GADOLA, District Judge.

Petitioner, Deborah Cherry, filed this motion to intervene, seeking to receive benefits as a member of the class of women who were injured by discriminatory employment practices of the Detroit Police Department (hereinafter "the Department"). The *Schaefer* class action of behalf of these women was filed in 1973 and the class was certified under Fed.R.Civ.P. 23(b)(2) in 1974. After winding its way through the court system for 22 years this matter was finally put to rest when a consent judgment incorporating the terms of a settlement was entered by this court on September 26, 1995. Attempting to revive this dormant litigation, on October 25, 1995 petitioner filed the present motion to intervene to file a late claim to the settlement funds. On November 30, 1995, without holding an evidentiary hearing, Magistrate Judge Morgan issued a Report and Recommendation recommending that the motion be denied as untimely and unmeritorious. Petitioner filed objections to the Report and Recommendation on December 8, 1995 and requested an evidentiary hearing. The parties to the *Schaefer* action, upon this court's order, responded to the objections. This court, for the following reasons, will deny the petitioner's motion. This court will not, however, adopt the November 30, 1995 Report and Recommendation of Magistrate Judge Morgan.

### I. Factual Background

#### A. Petitioner Cherry's Background

Petitioner applied for a position with the Department in September, 1973. Apparently, she was not hired until 21 months later, in June, 1975. Petitioner left the Department in 1980.[1] Petitioner had not been with the Department long enough to receive a pension when she left. The city states that she was not entitled to a pension, but may have been entitled to a disability retirement allowance. It is unclear whether petitioner receives a disability allowance or has ever received such an allowance. Apparently, the records of the Department indicate that petitioner does receive a disability retirement allowance, but the Police and Fire Retirement System[2] (hereinafter "the Retirement System") does not have any record of petitioner receiving such an allowance. Petitioner claims that she has never received any pension or disability allowance from the Department.

When petitioner left the department, she lived on Vassar Drive, in Detroit. In 1980,

---

1. Petitioner claims that she was never "terminated" from the Department, but was on extended sick leave when she applied for a disability pension in 1979. The city of Detroit claims that she "separated" from the Department in 1980. The exact circumstances surrounding petitioner's separation from the Department are unclear, but are not germane to this court's analysis.

2. The Retirement System is responsible for distributing benefits to former members of the Department.

she moved away from Vassar Drive. In 1984, she changed her Michigan driver's license address to Ewald Circle, in Detroit. Apparently, the Department and the Retirement System were not aware of her change of address until the filing of this motion.

## B. The Lawsuit's Background

This Title VII class action lawsuit, seeking injunctive and monetary relief, was filed in 1973. The class was certified under Fed. R.Civ.P. 23(b)(2) in 1974. There are approximately 800 class members, divided into three subclasses, the hiring subclass, the promotion subclass, and the compensation subclass. The present motion involves only the hiring subclass, which is comprised of those women who were not promptly hired by the Department after first applying because of the Department's discriminatory practices. Members of the hiring subclass were, however, eventually hired by the Department. Petitioner is a member of the hiring subclass.

Over the years, several injunctions providing relief to the class were granted. These injunctions forced the Department to hire and promote more women and give additional credit for time with the Department to the hiring subclass, pursuant to a formula agreed upon by the parties. As a result of this injunctive relief, petitioner has received seven months of additional credit for time served with the Department.[3] By 1991, the only remaining issue in the lawsuit was the amount of monetary damages to be awarded to the class. The parties reached a settlement, with the hiring subclass receiving $5,000,000 to be distributed among its members.[4] The case was referred to Magistrate Judge Morgan to oversee the equitable distribution of the money among the individual class members.

The hiring subclass members were entitled to back pay equal to the amount they would have made at the Department had they been promptly hired, less any amounts they earned from other sources during the period in which they were wrongly denied employment at the Department. To determine the amount of money earned by class members from other sources, in June, 1993, each hiring subclass member was sent a letter with a "Request for Social Security Information" (hereinafter "the Request") asking for the relevant earnings information. The letter advised that failure to return the Request would preclude a claim for back pay. Those women in the hiring subclass who did not receive back pay still received "noneconomic damages" from the money left in the settlement fund after back pay awards had been calculated.[5]

In addition to the June, 1993 correspondence sent to class members, in August, 1993 the Department publications, The Tuebor and Bars and Stripes carried notice of the pending determination of back pay. Petitioner did not return the Request. In December, 1994, Magistrate Judge Morgan recommended that those women in the hiring subclass who did not return the Request be precluded from seeking back pay. The magistrate's report and recommendation was sent to the last known addresses of the 94 women who had not returned the Request. No objections were filed to the report. Later, a Notice of Proposed Settlement was sent to all class members. This also stated that the women who did not return the Request would not receive back pay. It also notified the members that they could voice opinions on the settlement at a public hearing set for February 21, 1995. The hearing was also publicized on the front page of the Detroit Free Press (and undoubtedly received other media attention) on February 3, 1995. Petitioner did not attend the hearing or object. On April 17, 1995, Magistrate Judge Morgan recommended approval of the settlement. Petitioner again did not file ob-

---

**3.** Apparently, petitioner is still not entitled to a pension, even after the additional seven months is added to the time she actually worked for the Department.

**4.** The two other subclasses received a total of $5,800,000 to be distributed among their members.

**5.** This residual payment was $1,809.05. Pursuant to the consent judgment, petitioner has received a check for this amount.

jections to the Report and Recommendation. On August 7, 1995, this court adopted the April 17, 1995 Report and Recommendation. On September 26, 1995, this court entered the consent judgment that incorporated the terms of the settlement. On October 25, 1995, petitioner filed this motion.

Petitioner claims that the reason she did not respond to the numerous correspondences sent to class members was that she never received them, or any other notice of the then-pending litigation. No notice was ever sent to Ewald Circle, petitioner's current address. The Department and the Retirement System listed Vassar Drive as petitioner's last known address. Thus, the city explains, letters were sent to petitioner at Vassar Drive. When the letters sent to Vassar Drive were returned, the city attempted to update her address through the Retirement System, rather than the Secretary of State, because it mistakenly thought she was receiving a pension. Had the city known that petitioner was not receiving a pension, it presumably would have updated her name through the Secretary of State and discovered her current address.[6]

Petitioner contends that the city never even sent the letters to Vassar Drive, but rather to "Cassar" Drive. It seems that at least one correspondence sent to petitioner was inadvertently sent to Cassar Drive because of a misspelling of Vassar.[7] There is no Cassar Drive in Detroit. It is unclear which notices were sent to Vassar Drive and which were sent to Cassar Drive,[8] however it is clear that no notices were sent to petitioner's current address on Ewald Circle.

### C. This Motion and Magistrate Morgan's Report and Recommendation

Petitioner claims that she did not hear, read, or know about this class action lawsuit until October, 1995, when she saw an article about it in the Detroit Legal News. After seeing the Legal News article, she contacted the class attorney, who told her that she was too late to get any back pay, but that she would receive noneconomic damages (which she has since received). In this motion, petitioner claims that she had no notice of this action, that the notice scheme used by the parties to notify class members was inadequate, and accordingly, that to deny her motion would violate due process. Petitioner claims entitlement to back pay (the money she would have made at the department had she been hired more promptly) and 21, rather than seven additional months of credit at the department.

Magistrate Judge Morgan recommends denying the motion to intervene because it is untimely and unmeritorious. Magistrate Judge Morgan did not hold an evidentiary hearing, basing her findings upon the pleadings submitted by the parties. In holding that the motion is untimely, Magistrate Judge Morgan used a standard analysis applied to motions to intervene.[9] Magistrate Judge Morgan properly notes, however, that this is a motion to file an untimely claim to

---

**6.** Magistrate Judge Morgan entered a memorandum which memorialized the attempts made by the parties to locate class members. This memorandum lists 19 different steps taken to locate class members and is attached to this opinion as Appendix A.

**7.** Attached to one of the parties' pleadings in this matter was a mailing list, according to which petitioner lived on Cassar Drive.

**8.** The City of Detroit initially claimed to possess the envelope from the original June, 1993 letter sent to petitioner. The City claimed that the envelope was addressed to Vassar Drive. The City lost the envelope, though, and has since submitted an affidavit saying that the envelope was addressed to Vassar Drive. Further, the City has provided this court with what purports to be the list of addresses used by the parties to

notify the hiring subclass. According to this list, petitioner's address is on Vassar Drive. Petitioner contends that all of her notices were sent to Cassar Drive and that the mailing list has been recently corrected to read Vassar.

**9.** Magistrate Morgan considered the following factors, described in *Jansen v. City of Cincinnati*, 904 F.2d 336, 340 (6th Cir.1990), in determining whether the motion was timely: the point to which the suit has progressed, the purpose for which intervention is sought, the length of time preceding the application during which the proposed intervenors knew or should have known of their interest in the case, the prejudice to the original parties due to the proposed intervenors' failure to intervene promptly after they knew or reasonably should have known of their interest, and the existence of unusual circumstances militating against or in favor of intervention.

additional settlement funds, not a motion to intervene. It is not, strictly speaking, a motion to intervene because petitioner is already a member of the class and has received benefits as a member of the class.

With respect to the merits of the motion, i.e., whether notice was sufficient to bind petitioner to the terms of the consent judgment, Magistrate Judge Morgan found that petitioner was receiving a pension, and that the notice was proper, in part, because it was being sent to the same address as petitioner's pension. Magistrate Judge Morgan also noted that petitioner had already received certain benefits as a member of the class and concluded that petitioner had actual notice of this action. Accordingly, Magistrate Judge Morgan held that the denial of petitioner's motion did not violate due process.

Petitioner asserts that these findings are clearly erroneous. Petitioner claims, contrary to the magistrate's findings, that she has never received a pension. The Retirement System records support her claim that she is not receiving any type of pension or disability retirement allowance. Petitioner also claims that she never had actual notice of this action until October, 1995.

## II. Analysis

The magistrate treated this motion as a motion for intervention, and ruled that as such, it was untimely. As previously noted, this is not a motion for intervention because petitioner is already a member of the plaintiff class in this action. She has received some benefits as a member of this class. She is filing a motion to receive additional credit for time served with the Department and an increased share of the settlement funds for back pay.

It is undisputed that petitioner's claim for such relief is untimely. The amount of additional credit each member of the hiring subclass would receive was determined years ago. Petitioner's claim for additional settlement funds should have been filed between June, 1993 and December, 1994. Petitioner

explains her extreme tardiness as a result of her ignorance of her membership in the class. This was caused, she asserts, by the failure of the parties to reach her with notice of this action. Thus, the issue before the court is whether petitioner may be held to the terms of the consent judgment, under which she has forfeited her claims to back pay and increased seniority time, consistently with due process. If petitioner may, constitutionally, be bound by the consent judgment, then this court must decide whether it should so bind the petitioner.

■ Petitioner argues that the notice in this action must comply with Fed.R.Civ.P. 23(c)(2), which requires that "[i]n any class action maintained under subdivision (b)(3), the court shall direct to the members of the class the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." By its own terms, however, this provision is limited to class actions certified under Rule 23(b)(3). It does not apply to class actions certified under Rules 23(b)(1) and 23(b)(2). *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177 n. 14, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974); *Alexander v. Aero Lodge No. 735,* 565 F.2d 1364, 1373 (6th Cir.1977); 7B Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 1786, at 191 & n. 9. The present action was certified under Rule 23(b)(2).[10] Thus, the parties did not have to satisfy Fed.R.Civ.P. 23(c)(2).

Notice for Rule 23(b)(2) actions is governed by Rule 23(d)(2) and Rule 23(e). Rule 23(d)(2) permits the court to

requir[e], for the protection of the members of the class or otherwise for the fair conduct of the action, that notice be given in such manner as the court may direct to some or all of the members of any step in the action, or of the proposed extent of the judgment, or of the opportunity of members to signify whether they consider the representation fair and adequate, to inter-

---

**10.** Fed.R.Civ.P. 23(b)(2) allows for the certification of a class when Rule 23(a) is satisfied and "the party opposing the class has acted or refused to act on grounds generally applicable to

the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole...."

vene and present claims or defenses, or otherwise to come into the action. . . .

Rule 23(e) provides that "[a] class action shall not be dismissed or compromised without the approval of the court, and notice of the proposed dismissal or compromise shall be given to all members of the class in such manner as the court directs." Thus, under Rule 23, the giving of notice in (b)(2) actions is not mandatory, except when the action is finally settled. *Alexander*, 565 F.2d at 1374. Further, the form of the notice need not comply with Rule 23(c)(2). This is because (b)(1) and (b)(2) classes will generally be more cohesive than (b)(3) classes. Thus, absent parties are more likely to have their interests adequately represented by the named plaintiffs in (b)(1) or (b)(2) actions than in (b)(3) actions. *Id.*

■ A slightly different situation is presented when monetary relief is requested in Rule 23(b)(2) actions. Requesting such relief does not preclude a class from properly being certified under Rule 23(b)(2). *Alexander*, 565 F.2d at 1372 ("A request for back pay [in a Title VII class action] does not preclude certification under [Rule 23(b)(2) ]"). Nonetheless, when monetary damages are requested, the cohesiveness among individual members often will not be present. This cohesiveness is the hallmark of a (b)(2) action and justifies the discretionary notice to absent class members. Thus, the claims for monetary damages will be much like the claims in a (b)(3) action. Accordingly, courts have held that when monetary relief is requested in a (b)(2) class action, "some form of notice" must be given before absent class members will be bound. *Johnson v. General Motors Corp.*, 598 F.2d 432, 438 (5th Cir. 1979); *Grogg v. General Motors Corp.*, 72 F.R.D. 523, 535 (S.D.N.Y.1976). Such notice need not always, however, "be equivalent to that required in (b)(3) actions." *Johnson*, 598 F.2d at 438. Therefore, some form of notice to absent class members was required in the present action because (1) monetary damages were requested, and (2) Rule 23(e)

requires notice before settlement of a class action. Such notice did not have to comply with Rule 23(c)(2).

While some notice was given in this action, petitioner claims that it was inadequate. Petitioner urges this court to hold an evidentiary hearing to determine how notice was given in this case and whether petitioner actually received notice. Petitioner asserts that she never had actual notice of this action, notwithstanding Magistrate Judge Morgan's finding to the contrary. While this court believes that some of the magistrate's findings concerning notice may be founded upon inaccuracies contained in the pleadings before the magistrate, e.g., the finding that petitioner was receiving a pension, an evidentiary hearing is not necessary. This is because even if the petitioner's claims are true, she may be held to the terms of the consent judgment consistently with due process. Thus, the court will assume, for purposes of this motion: that petitioner never received any type of pension or disability allowance from the Department; that the Department records stating that petitioner did receive a disability allowance or pension were in error; that at least one of the notices sent to petitioner was sent to a non-existent address on Cassar Drive; that the other notices sent to petitioner were sent to Vassar Drive, long after petitioner moved away from Vassar Drive; that, because the parties mistakenly believed petitioner was receiving a disability allowance from the Department, the parties updated petitioner's address through the Retirement System, not the Secretary of State's office; and that petitioner, in spite of over two decades of litigation, never had actual notice of this action prior to October, 1995.[11]

■ Under these assumptions, the first issue to be addressed is whether due process or Rule 23 requires actual receipt of notice. The language of Rule 23 itself is ambiguous, but, in this court's opinion, does not require actual receipt of notice. Rule 23(d)(2) allows

---

**11.** The court stresses that it is neither finding that petitioner never had actual notice of this action prior to October, 1995 nor indicating that the magistrate's finding to the contrary is clearly erroneous. Given the length of this action, and the publicity surrounding it, the court would be reticent to make such a finding. The court is merely assuming, *arguendo*, that petitioner never had such notice.

the court to order that "notice be given ... to some or all of the members." Rule 23(e) also directs that "notice ... be given to all members of the class." Even the most stringent notice requirement, Rule 23(c)(2), provides that "the court shall direct to the members of the class, the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Rule 23 appears only to require that notice be directed, or sent, not that it actually be received. The commentary to Rule 23(c)(3) states:

> [t]he judgment in a class action maintained as such to the end will embrace ... in a class action under subdivision (b)(1) or (b)(2), those found by the court to be class members; in a class action under subdivision (b)(3), those to whom the notice prescribed by subdivision (c)(2) *was directed* ....

(emphasis added). Again, there is no express recognition that only those who receive actual notice will be bound. *See Hallman v. Pennsylvania Life Ins. Co.,* 536 F.Supp. 745 (N.D.Ala.1982).

■ Even though Rule 23 does not require actual receipt of notice, due process may require actual notice. Reviewing the Supreme Court decisions in this area, however, this court is convinced that, in an action such as this, actual notice is not required by due process. In *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950), the Court stated that "[a]n elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice *reasonably calculated,* under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Id.* at 314, 70 S.Ct. at 657 (emphasis added). This language certainly implies that actual receipt of notice is not required by due process, as long as the notice sent was "reasonably certain to inform those affected, or, where conditions do not reasonably permit such notice, that the form chosen is not substantially less likely to bring home notice than other of the feasible and customary substitutes." *Id.* at 315, 70 S.Ct. at 658. In *Schroeder v. City of*

*New York,* 371 U.S. 208, 83 S.Ct. 279, 9 L.Ed.2d 255 (1962), the Court noted that the defendant city was "constitutionally obliged to make at least a good faith effort to give personally to the appellant [notice of the right to be heard]—an obligation which the mailing of a single letter would have discharged." *Id.* at 214, 83 S.Ct. at 283. Again, the clear implication is that due process does not require actual notice, but rather a good faith effort to provide actual notice.

In contrast to the above language, however, in *Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985), the Court held that "[i]f the forum state wishes to bind an absent plaintiff concerning a claim for money damages or similar relief at law, it must provide minimal procedural due process protection. The plaintiff must receive notice plus an opportunity to be heard and participate in the litigation." *Id.* at 811–12, 105 S.Ct. at 2974. This language would seem to imply that notice must actually be received for an absent plaintiff to be bound. The Court continues, however, to state that "[t]he notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 812, 105 S.Ct. at 2974. This language in *Shutts,* quoted from *Mullane,* supports the view that actual receipt is not required by due process. This contradiction has been noted by Professors Wright and Miller:

> [The requirement that notice actually be received] cannot easily be reconciled with the implicit recognition in *Shutts* that notice cannot always be individually delivered and yet, as per *Mullane,* a binding judgment may be entered, or with the Court's attempt to approach the binding effect problem pragmatically in light of the objectives and special nature of plaintiff class actions. Thus, it seems appropriate to read *Shutts* restrictively as setting forth ... requirements only for Rule 23(b)(3) damage suits, and not as suggesting that similar restraints may be placed on other class actions. Further, the preferred view should be that it does not foreclose the possibility of binding absent plaintiff class members who do not receive notice ...

when the court has adopted a reasonable notice scheme that is designed to reach all identifiable class members and fully meets the *Mullane* standard, and there is adequate representation.

7B, Wright, Miller, & Kane, Federal Practice and Procedure § 1789, at 256.

This court agrees with this restrictive view of *Shutts*. Accordingly, this court holds that in a Rule 23(b)(2) class action in which monetary damages are requested and a consent judgment is entered, absent class members may constitutionally be bound without actual receipt of notice of the pendency of the action or its settlement, as long as notice is reasonably calculated, under all the circumstances, to apprise absent class members of the pendency of the action and its settlement.

Other courts have reached this same conclusion. In *Fontana v. Elrod*, 826 F.2d 729, 732 (7th Cir.1987), the court stated:

when monetary damages are sought in a (b)(2) action, "due process does require notice before the individual monetary claims of absent class members may be barred." While the notice must be adequate, it is not necessary that each member of the class actually receive that notice. "[A]n absent class member will be bound by any judgment that is entered if appropriate notice is given, even though that individual never actually received notice."

*Id.* at 732 (citations omitted). *See also, Hallman v. Pennsylvania Life Ins. Co.*, 536 F.Supp. 745 (N.D.Ala.1982); *McCubbrey v. Boise Cascade Home & Land Corp.*, 71 F.R.D. 62, 73–74 (N.D.Cal.1976).

■ Recognizing that actual notice is not required by due process does not answer the question of whether the notice scheme in the present case passes constitutional muster. In the present case, the parties mailed notice to the class members at their last known address, garnered from Department records. If correspondence was returned, the addresses of those members who were receiving pensions or disability allowances were updated through the Retirement System, which

distributes these payments. If the members were not receiving pensions, then their addresses were updated through the Secretary of State's office.[12] Various notices were then sent to these updated addresses. Further, notice was published in two Department publications, The Tuebor and Bars and Stripes. Additionally, notice of this action received front-page news coverage in the Detroit Free Press.

In spite of petitioner's claims that she fell through the cracks of this extensive notice system, the system is reasonably calculated to provide notice to the identifiable absent class members. That petitioner may not have received notice evidences only that the system was not perfect. As discussed above, due process does not require perfection. This notice system was reasonably well designed. It was reasonable for the parties to initially use the Department's last known addresses of class members because all of the members had worked for the Department. Further, it was reasonable to use the Retirement System to update addresses for those members believed by the Department to be receiving pensions. Clearly, the organization responsible for distributing pension payments would be likely to have the current addresses of those members receiving pensions. It was also reasonable to use the Secretary of State's office to update the addresses of those members believed by the Department to be ineligible for pensions. This is true notwithstanding the remote possibility that petitioner, or other class members, could be misclassified as receiving a pension. Additionally, it was reasonable to use Department publications to publish notice, given that all class members had previously worked for the Department. All told, this court is convinced that the notice scheme developed by the parties fully meets the *Mullane* standard. It was reasonably calculated under the circumstances to provide notice to absent members.

In *Burns v. Elrod*, 757 F.2d 151 (7th Cir. 1985), the Seventh Circuit was presented with a strikingly similar situation. A 23(b)(2)

12. Unfortunately, plaintiff's name was not updated through the Secretary of State's office because the parties mistakenly believed that she was re-

ceiving a pension. Thus, her address was updated through the Retirement System, which had her last address listed as Vassar Drive.

class action against a sheriff's office alleged civil rights violations and requested injunctive relief and back pay. The parties reached a settlement. Notice of the settlement was provided to absent members by mailing it to their last known address, obtained from the sheriff's office. Additionally, notice was published in each of the two Chicago daily newspapers. Over 500 of the 700 notices mailed out were returned. The only effort made by the parties to update these addresses was to look through the Chicago phone book. This process reached another 37 prospective members. The deadline for filing claims was June 5, 1981. On January 25, 1983, three claimants petitioned to file late claims. The district court denied their petitions. Those petitioners, much like Petitioner Cherry, argued that they did not receive notice and that their addresses should have been updated through the Secretary of State's Office.

The Seventh Circuit held that the notice given was reasonable because the parties did not have to update addresses through the Secretary of State's Office: "While petitioners now suggest that additional avenues of inquiry might have led to the notification of even more class members, Rule 23 does not require defendants to exhaust every conceivable method of identification." *Id.* at 154.[13] In the present case, there were much more extensive efforts undertaken to update addresses than in *Burns* and the notice scheme was substantially more successful than the scheme found to be reasonable in *Burns.*

Having held that petitioner's claims could be constitutionally denied, the *Burns* court then held that the district court did not abuse its discretion in denying the late claims. In support of this conclusion, the court noted (1) the large amount of time that had passed between the deadline for claims and when the claims had actually been filed and (2) that the other parties were opposing the new claims. *Id.* at 155. The court stated that "[d]efendants are entitled to some certainty in their settlement liability and to avoid claims that trickle in too long past the

filing deadline." *Id. See In re Gypsum Antitrust Cases,* 565 F.2d 1123 (9th Cir.1977) ("There is no question that in the distribution of a large class action settlement fund, 'a cutoff date is essential and at some point the matter must be terminated.' Nor is there any question that seven or even three months is ordinarily a sufficiently long period within which class members may file claims.")

In the present case, in December, 1994, (approximately seventeen months after claims for back pay were first requested) Magistrate Judge Morgan recommended that those members who had not made claims for back pay be precluded from doing so. Ms. Cherry's petition was not filed until October, 1995. Her petition came ten months after the magistrate's recommendation and over 27 months after the requests for claims were first sent out. Further, in the present case, the petition comes after a final judgment was entered by this court, strongly militating against petitioner's claim. *See Alaniz v. Tillie Lewis Foods,* 572 F.2d 657, 659 (9th Cir. 1978). Unlike the petitioners in *Burns,* Petitioner Cherry has received both injunctive and monetary relief as a result of her membership in this class action. Accordingly, in this case, as in *Burns,* "the equities do not all rest on petitioner's side." *Burns,* 757 F.2d at 155. At this late date, this court does not believe that it should exercise its discretion to allow petitioner's claims.

In sum, this court concludes that notice was proper because it was reasonably calculated to reach absent class members, even though notice may not have reached petitioner. Therefore, this court concludes that to deny petitioner's claims would not violate due process. or Fed.R.Civ.P. 23. Additionally, this court sees no compelling reason to allow petitioner's claims at this late date, and will therefore deny petitioner's motion.

### *ORDER*

Therefore, it is hereby **ORDERED** that petitioner's Motion to Intervene and to Stay Consent Judgment be **DENIED.**

---

**13.** The *Burns* petitioners later filed a separate action against the defendant in the *Burns* case. The Seventh Circuit upheld the dismissal of this second action, holding that the plaintiffs were bound by the first class action because the notice to absent class members comported with due process, even though petitioners did not actually receive the notice. *Fontana v. Elrod,* 826 F.2d 729 (7th Cir.1987).

The November 30, 1995 Report and Recommendation of Magistrate Judge Morgan is not adopted by this court.

This order moots petitioner's motion to compel production of documents, which is hereby **DENIED**.

**SO ORDERED.**

## APPENDIX A

### UNITED STATES DISTRICT COURT EASTERN DISTRICT OF MICHIGAN SOUTHERN DIVISION

Grace Schaefer, et al., Plaintiffs,

v.

Philip G. Tannian, et al., Defendants.

Civil Action No. 73–39943

District Judge PAUL GADOLA

Magistrate Judge VIRGINIA MORGAN

### *MEMORANDUM MEMORIALIZING ATTEMPTS TO LOCATE ALL PLAINTIFFS*

Counsel for plaintiffs and counsel for the City of Detroit agreed on the record on January 5, 1995, to the form and content of this list memorializing the attempts made during this case to locate all plaintiffs. The following list encompasses the efforts made as of January 5, 1995.

1. [July 13, 1992] Master list of plaintiffs compiled by City.
2. [August 14, 1992] City to provide plaintiffs with the last known address of plaintiffs, including those no longer working for the City.
3. [July 22, 1992] Plaintiffs review master list and suggest some additions and corrections and recommend that the City review all names.
4. [January 13, 1993] City divides the joint master list into three subclasses and submits a reviewed list to plaintiffs for their review and comment.
5. [April 2, 1993] Plaintiffs review list and make corrections and additions.
6. [May 5, 1993] City makes additions requested by plaintiffs.
7. [May 20, 1993] Plaintiff's counsel agrees to draft a letter to plaintiffs, enclosing a list of separated members, a Social Security Administration request form, and return envelope addressed to Magistrate Judge Morgan's chambers.
8. [May 24, 1993] Discovery order for search of Secretary of State records for updated addresses on non-pensioned, non-active, surviving members of the hiring subclass.
9. [June 10, 1993] City distributes memo and notice letter to hiring subclass members requesting social security earnings information.
10. [June 23, 1993] City mails copies of notice letter to non-pensioned, non-active members of the hiring subclass (total of 256 persons). Six deceased members of the hiring sub-group did not receive letters.
11. [July 6, 1993] City updates mailing list and sends out second mailings to those whose address has changed. The final 126 mailings to pensioned members of the hiring subclass was completed.
12. [July 26, 1993] Letter from plaintiff's counsel, John Runyon, stating that he will publish an announcement on missing persons from the hiring subclass in the August editions of DPOA publications, The Tuebor and Bars and Stripes.
13. [August 18, 1993] Letter from Magistrate Judge Morgan to Social Security Administration requesting information be provided *gratis* on the earnings from hiring subclass.
14. [October 7, 1993] Letter from Magistrate Judge Morgan submitting all Requests for Social Security Information obtained from the hiring subclass.
15. [December 9, 1994] City requests an update from DPD Personnel re members who have separated from the department since September 1992, the status of their separation, and a new list of assignments for all currently active members of the class.
16. [December 22, 1994] City requests that members who have separated since 1992 and who are not receiving a retirement allowance have their addresses checked through the Secretary of State's records.

17. [December 22, 1994] City requests that members who have separated since 1992 and who are receiving a retirement allowance have their addresses updated by the City of Detroit Pension Bureau.

18. [December 28, 1994] City submits to court and plaintiffs' counsel the updated address lists and mailing labels for active, pensioned and non-pensioned class members.

19. December 29, 1994] City submits to court and plaintiff's counsel further updates in class members' addresses who are receiving a retirement allowance.

/s/ Virginia Morgan
VIRGINIA MORGAN
U.S. MAGISTRATE
JUDGE
JAN 9 1995