*People United For Children, Inc. v. The City of New York*

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**
August Term 2008

(Argued: June 18, 2009                    Decided: December 8, 2009)

Docket Nos. 07-2042-cv(L), -2084-cv(CON), -2636cv(CON)

WILBUR MCREYNOLDS, EDDIE JONES,

Non-Party-Appellants,

CONCHITA JONES,

Plaintiff-Appellant,

- v. -

JOSLIN RICHARDS-CANTAVE, On behalf of himself and all others similarly situated, KHATIRA HIKMAH, On behalf of herself and all others similarly situated, KHALIAH MARTIN, On behalf of herself and all others similarly situated, AMANDA SHERMAN, On behalf of herself and all others similarly situated, THERESA LOGAN, On behalf of herself and all others similarly situated, PEOPLE UNITED FOR CHILDREN, INC., On behalf of themselves and all others similarly situated, AGATHA SIBLEY, On behalf of herself and all others similarly situated, CHERRY MCCLAMY, On behalf of herself and all others similarly situated, LESLEY MARGERITE ADAMS-SIMIEN, DENISE JOHNSON BURGESS,

Plaintiffs-Appellees,

LUCILLE DELAPENHA, On behalf of herself and all others similarly situated, CANDIA RICHARDS-CANTAVE, On behalf of herself and all others similarly situated, JOSE PENA,

Plaintiffs,

THE CITY OF NEW YORK, MICHAEL BLOOMBERG,[*] Mayor of the City of New York,

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Mayor of New York City Michael Bloomberg is automatically substituted for former Mayor of New York City Rudolph Giuliani.

ADMINISTRATION FOR CHILDREN'S SERVICES, JOHN B. MATTINGLY,** In his official capacity as Commissioner of the Administration for Children's Services,

Defendants-Appellees.

---

Before: MINER, CABRANES, and HALL, Circuit Judges.

Appeal from a judgment entered February 26, 2007, in the United States District Court for the Southern District of New York (Duffy, J.), in a class action challenging defendants-appellees' removal policies pertaining to children in abuse and neglect cases, the District Court having (1) approved a settlement agreement providing, inter alia, declaratory and injunctive relief to the class, certified pursuant to Federal Rule of Civil Procedure 23(b)(2), following a fairness hearing; and (2) found that plaintiff-appellant had opted out of the class and therefore declined to address her objections to the settlement.

Affirmed and remanded.

<div style="margin-left:50%">

HAGIT ELUL, Hughes, Hubbard & Reed LLP, New York, NY, for Plaintiff-Appellant Conchita Jones.

Wilbur McReynolds, Fayette, AL, pro se.

JOAN P. GIBBS, (Esmeralda Simmons, Timeko Overton, of counsel), Center for Law and Social Justice, Brooklyn, NY, for Plaintiffs-Appellees Joslin Richards-Cantave, Khatira Hikmah, Khaliah Martin, Amanda Sherman, Theresa Logan, People United for Children, Inc., Agatha Sibley, Cherry McClamy, Lesley Margerite Adams-Simien, and Denise Johnson Burgess.

SUSAN CHOI-HAUSMAN, (Michael A. Cardozo, Pamela Seider Doglow and Martha Calhoun, of cousnel), Corporation Counsel of the City of New York, New York, NY, for Defendants-Appellants, the City of New York, Michael Bloomberg, Administration for

</div>

---

** Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Commissioner of Administration for Children's Services John B. Mattingly is automatically substituted for former Commissioner of Administration for Children Services Nicholas Scoppetta.

Children's Services, and John B. Mattingly.

MINER, Circuit Judge:

This is an appeal from a judgment entered in the United States District Court for the Southern District of New York (Duffy, J.) approving a settlement agreement in a class action certified pursuant to Federal Rule of Civil Procedure 23(b)(2). In the action, class plaintiffs challenged policies adopted by the New York City Administration for Children's Services ("ACS") relating to the removal of children from their homes in cases of abuse and neglect. Named as defendants are the City of New York ("City"), then-mayor of the City Rudolph Giuliani, and ACS Commissioner Nicholas Scoppetta (collectively, "defendants"). At a fairness hearing held by the District Court, plaintiff-appellant Conchita Jones ("Jones") and non-party appellant Wilbur McReynolds ("McReynolds") objected to the proposed settlement agreement.[1] The District Court determined, inter alia, that Jones had opted out of the class, and the court entered judgment on February 26, 2007, approving the settlement agreement, which provided for declaratory and injunctive relief to the class as a whole.

Jones and McReynolds, both acting pro se, filed a timely notice of appeal of the February 26, 2007 judgment. On August 3, 2007, this Court granted Jones' motion to proceed in forma pauperis and for appointment of counsel to brief "among any other issues, whether Appellant Conchita Jones opted out of the settlement agreement." This Court appointed pro bono counsel on March 31, 2008.

---

[1] Although McReynolds is not a named class member, he asserts that, as an "aggrieved Black New York City parent[] . . . with four children in foster care under the auspices of [ACS]," he is a member of the class. See In re Drexel Burnham Lambert Group, Inc., 130 B.R. 910, 923 (S.D.N.Y. 1991) (noting that only class members have standing to object to the settlement of a class action), aff'd, 960 F.2d 285 (2d Cir. 1992).

On appeal, Jones claims that the District Court erred in finding that she had opted out of the class settlement and in removing her as a class representative on the basis of that finding. Jones also asserts that the District Court accordingly failed to consider her objections to the class settlement. McReynolds claims that the notice of the settlement hearing was insufficient to alert potential class members; that the settlement was not fair, adequate, or reasonable; that there is no compensatory relief provided in the class settlement; and that the settlement contains an ambiguous provision in the release of class claims. For the following reasons, we conclude that the District Court erred in finding that Jones had opted out and, consequently, in removing her as class representative, but nevertheless we hold that the error was harmless. With respect to the agreement, we hold that it was fair, adequate, and reasonable, although the text of the release provision does not comport with the undisputed intent of the parties. We therefore affirm the order approving the settlement but remand for the District Court to direct the parties to modify the release provision accordingly.

**BACKGROUND**

In March 1999, People United for Children ("PUC"), a non-profit organization that "conducts support group meetings for individuals who have lost custody of their children to [ACS]," and a number of African American plaintiffs, including plaintiff-appellant Jones, filed a complaint, pursuant to 42 U.S.C. §§ 1983, 1988, against defendants in the United States District Court for the Southern District of New York. The complaint, as later amended, alleged ten causes of action for violations of due process, equal protection, and parental, privacy, cultural, and religious rights, as well as claims of discrimination, under the New York State and United States Constitutions.

The amended complaint primarily alleged as unconstitutional the defendants' practice of removing or threatening removal of children from the homes of African-American and Latino parents and guardians where there was "no 'imminent danger to the child's life or health,' without completely investigating allegations of child neglect and abuse, without offering or providing preventive services, without prior notice, without being fully and adequately informed of their rights, without a judicial hearing and/or any opportunity to be otherwise meaningfully heard." The amended complaint sought declaratory and injunctive relief, in addition to nominal and compensatory damages.

On July 18, 2000, the District Court granted in part and denied in part the City's motion to dismiss the amended complaint. The District Court dismissed the plaintiffs' religious discrimination claims but permitted the plaintiffs to proceed with their remaining claims. See People United for Children, Inc. v. City of N.Y., 108 F. Supp. 2d 275, 302 (S.D.N.Y. 2000).

On April 21, 2003, the District Court issued an order certifying the following class and subclasses of plaintiffs pursuant to Federal Rule of Civil Procedure 23(b)(2):

African American or black parents or persons legally responsible for the care of children within the City of New York, who are subject to the Administration for Children's Services' policy of resolving "any ambiguity regarding the safety of a child . . . in favor of removing the child from harm's way" and returning children to their parents or guardians "only when families demonstrate to the satisfaction of ACS that their children are safe and secure," and who have [been] or will be:

(i) threatened with the removal of their children following allegations of child neglect or abuse by the Administration for Children's Services without a proper investigation as to whether their children will be in danger if they remain in the custody of their parents;

(ii) subjected to the removal of their children following allegations of child neglect or abuse by the Administration for Children's Services without a proper investigation as to whether their children will be in danger if they remain in the

-5-

custody of their parents;

(iii) subjected to the removal of their children from their custody following allegations of child neglect or abuse without notice and opportunity to be heard in Family Court;

(iv) subjected to the removal of their children and not provided with procedures, programs, or services for retaining or regaining custody of their children; and/or

(v) subjected to the removal of their children and despite having successfully completed the available programs or services for regaining the custody of their children, have not had their children returned to them.

The certification order also provided that "the statistical reports and anecdotal evidence appear to support the inference that there is an aggrieved class of African American or black parents," over Latino or white parents, generally.[1] By order entered September 3, 2003, the District Court found that Jones and others were adequate class representatives for subclass (ii), which was comprised of African-American parents or guardians whose children were removed by ACS without a proper investigation as to whether their children were in danger if they remained in the custody of their parents.

After two years of negotiations, in which Jones did not participate, PUC and defendants reached a proposed settlement agreement. The District Court preliminarily approved a

---

[1] Specifically the District Court cited the following statistics in its Order:

According to the District Report by the New York State Department of Social Services, between 1996 and 1998, black children comprised over fifty percent of the children in foster care, while white children comprised less than three percent. . . . In 1998, seventy-three percent of the children placed in foster care in New York City were African American, while an estimated three percent of the foster care children were white; . . . and one of every twenty-two African American children citywide is in foster care, compared with one of every fifty-nine Latino children and one of every 385 white children.

stipulation of settlement by order of October 24, 2005. The District Court also approved the content of the notice and the method of giving notice to class members of the proposed settlement. A fairness hearing was scheduled for December 5, 2005.

On February 2, 2006, the District Court sua sponte issued an order removing Jones as a class representative following its finding that her claims were moot because her son was no longer a minor in foster care and her parental rights over her daughter had been terminated on motion of the ACS in New York State Family Court. Jones and McReynolds both filed a notice of appeal as to that order, but this Court dismissed the appeal sua sponte for lack of jurisdiction. On February 26, 2007, the District Court issued an order (the "Order") finding that Jones had opted out of the class action at the fairness hearing and therefore her objections need not be considered. People United for Children, Inc. v. City of N.Y., No. 99-cv-648, 2007 WL 582720, at *3 (S.D.N.Y. Feb. 26, 2007). The Order also approved the proposed settlement agreement (the "Settlement Agreement") pursuant to Federal Rule of Civil Procedure 23(e).[2] Id. at *3–4.

I.      The Settlement Agreement

The District Court made several findings in support of its approval of the Settlement Agreement. The court found that the Settlement Agreement required ACS to develop "Family Team Conferences" and other procedures to build towards effective communication between ACS and families. Id. at 2. ACS would also make efforts to distribute informational pamphlets and other materials (such as the "Parent Guide to New York State Child Abuse and Neglect Laws," "Parent Handbook," and "Children's Rights" brochures). Id. at *2. The court stated that

_____

[2] The order did not mention the District Court's earlier finding that Jones' claims were moot.

-7-

the negotiated-for procedures were designed to ensure that parents stay informed of any pertinent information when involved with ACS, and to provide for the arrangement of meetings to discuss risk factors and the best interests of parents' children, including foster care. Id.

> Such procedures include: (i) a Critical Case Conference to be held in response to a request for voluntary placement of a child; (ii) an Elevated Risk Conference to be held by the Division of Child Protection within three days of a caseworker's assessment that the risk to a child has been increased; (iii) a post-removal, 72-Hour Child Safety Conference to be held by the Division of Child Protection three to five business days after a protective removal; and (iv) a 30-Day Family Permanency Conference to be held by the Division of Child Protection thirty days after a protective removal.

Id.

Although the court certified the class pursuant to Rule 23(b)(2), which provides that "final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole," the Settlement Agreement also included an incentive award of $15,000 to each of the named plaintiffs-appellees Lesley Adams, Joslin Cantave, and Theresa Logan; an incentive award of $10,000 to each of the named plaintiffs-appellees Amanda Sherman, Agatha Sibley, Cherry McClamy, and Kaliah Martin; and a separate award of $10,000 to PUC for use in educational programs. Jones was the only named plaintiff who did not receive an incentive award, and this was because the negotiating parties believed that "she refused her award, in refusing to endorse the settlement."

The Settlement Agreement also included general release provisions. Under paragraphs 10 and 11, the Settlement Agreement stated that nothing in the stipulation "shall be deemed to be a finding or an admission that Defendants have in any manner violated Plaintiffs' rights, or the rights of any other person," and "do[es] not constitute, and shall not be construed as, evidence of

liability or wrongdoing in any other action or proceeding. This Stipulation shall not be admissible in, nor is it related to, actions for damages brought by any individual, or to any other litigation or settlement negotiations." Paragraph 16, entitled "Release," further provides:

> Plaintiffs, . . . release the [defendants] and their successors in interest, and any and all present and former officials, employees or agents of the City of New York and Children's Services . . . from all rights of action, proceedings, claims and liability, connected with, related to or arising out of claims and causes of action set forth in the complaint in the above-captioned proceeding with the exception of any claims for attorneys' fees described in paragraph "14."

II.     Notice to Class Members

By order dated October 24, 2005, the District Court approved the content of the Notice of Settlement to the class members (the "Notice"). The Notice explained that a class action lawsuit had been brought to challenge ACS's policies "with respect to their investigation of Black parents or guardians following allegations of child neglect and abuse and the removal and return of their children to their custody." The Notice also explained the new policies and procedures agreed to and set forth in the Agreement settling the lawsuit and described the incentive awards, in the amounts of $10,000 or $15,000, to be provided to each of the named plaintiffs in the class except Jones. The Notice informed the class members that they were allowed to "come to court on [the day of the fairness hearing] to tell the judge what you think of the settlement," or to write to the judge by a certain date before the hearing. Distribution of the Notice was proposed as follows:

> (a) to be published in the following papers, the Amsterdam News, Carribean Life and Our Time Press and (b) conspicuously posted in all of the Children's Services field offices in poster format measuring 11" x 17" and (c) provide copies of the Notice to the Executive Director of each Foster Care Agency with whom Children's Services contracts with directions that it be posted in areas of client contact[.] The[] municipal defendants shall provide plaintiffs' counsel with a sufficient number of

copies of the notice so that plaintiffs' counsel shall cause to be distributed to all the offices of all child welfare policy, legal and organizing groups known to plaintiffs' counsel.

The District Court found that the form and distribution of the Notice was sufficient as proposed:

> The Notice according to the procedures above-detailed is authorized and approved as constituting the best notice practicable under the circumstances to each member of the plaintiff class, and due and sufficient notice of the hearing and the rights of the members of the plaintiff with respect thereto, in full an[d] complete compliance with Rule 23 of the Federal Rules of Civil Procedure.

III.     Objections to the Preliminary Approval of the Settlement Agreement

Seven sets of written objections to the Settlement Agreement were filed with the District Court in response to the Notice. Also, a number of class members and interested parties appeared at the December 5, 2005 fairness hearing to make oral objections to the Settlement Agreement. Jones filed two sets of written objections,[3] and she made oral objections at the fairness hearing as well. McReynolds filed two sets of written objections and also appeared at the hearing. The objections, made by Jones and others, challenged the Settlement Agreement on the grounds that it provided no real reform in ACS's policies; that no damages were awarded to the class members (with the exception of incentive awards to the named plaintiffs); that the distribution and content of the Notice were inadequate; that there was no finding made by the District Court pursuant to Federal Rule of Civil Procedure 23 that the settlement is fair, reasonable, and adequate; that the class members were not directly involved in the settlement

---

[3] The docket sheet suggests that three sets of written objections were made by Jones. However, no "second" set was ever recorded, and therefore there are only two written sets of objections considered in the record before us — the first and the "third." The third set contains a wide range of objections to the settlement. The written set of objections filed by McReynolds are nearly identical to those made by Jones.

negotiations; that the settlement was fraudulent; that the settlement was a product of collusion; and that the release provision in the settlement was ambiguous. Jones did not object that the Settlement Agreement did not provide her with an incentive payment.

During the fairness hearing, when Jones was afforded the opportunity to speak and present her objections on the record, the District Court asked her whether she wished to withdraw from, or opt out of, the class. Jones did not get the chance to answer the question directly but continued to assert objections:

> THE COURT: Ms. Jones, let me put this simply to you. Do you want to withdraw from the class action here?
>
> MS. JONES: Well —
>
> THE COURT: And if so, do you want to go to trial or dispose of the case. I'm telling you, you're saying one thing, which indicates to me — and I just want to make absolutely sure of what you're saying.
>
> MS. JONES: Okay. What I'm saying is this. A communication with regard to this notice, which misrepresents the status, purpose, or impact of litigation, is unauthorized under the Rule 23D.
>
> THE COURT: Who made such a communication?
>
> MS. JONES: The — the notice.

In an exchange with lead counsel for PUC, Joan Gibbs, the District Court expressed its view that it deemed Jones to have opted out by virtue of her having raised two written objections to the Settlement Agreement:

> THE COURT: As to the other one, Ms. Jones, I guess she's out of the class, or how else do you see it, if you do see it at all.
>
> MS. GIBBS: Well, I do see it as her being not out of the class. I think that is a question, has some legal issues surrounding it. She rejected the settlement. But I don't think that [opting out] is her position, because when you asked her a

question [as to whether she wanted to opt out], she didn't answer yes.

THE COURT: Well, she is not in it, because she's opting out.

MS. GIBBS: Right.  Yes, your Honor.

THE COURT: If she objects to the settlement, then she is opting out; am I correct?

MS. GIBBS: Yes.  You're right.

THE COURT: All right.

Jones and the District Court had a subsequent exchange in which Jones made clear that she did not intend to opt out:

THE COURT: I also got a letter from Eddie B. Jones, who is the —

MS. GIBBS: Son of Conchita Jones, your Honor.

The COURT: I guess he is out of it, because [his] mother has opted out.  And that one letter, I don't want to miss anything here, let me just look through this.

MS. JONES: Excuse me, your Honor.  I have not opted out.

THE COURT: What?

MS. JONES: I merely objected.

THE COURT: You can't have it both ways.

MS. JONES: In the rules to object to class settlement as a class member.  It is in the rules.  It is perfectly legal.

THE COURT: You can't have it both ways, not for settlement.

MS. JONES: The rules are the rules.

Responding to the objections made at the fairness hearing, the District Court determined, by order dated February 23, 2007, that

[t]here have not been any credible objections raised to the Settlement, either at the fairness hearing or otherwise. At the hearing, objections included allegations that the notice to class members was insufficient and that the terms of the Settlement were unclear as to whether plaintiffs may still pursue individual damages actions. I find that the defendants fully complied with the notice procedures as put forth in the order dated October 20, 2005. Furthermore, it was the intention of the parties that the plaintiffs may sue for individual damages, and it is clear that they are able to do so even without an explicit statement to this effect in the Settlement.

People United for Children, 2007 WL 582720, at *3. While the District Court rejected the objections raised by the class members, the court found that "[p]laintiff Conchita Jones also raised a number of objections at the fairness hearing; however Ms. Jones has opted out of the class and therefore I need not address the substance of her claims here." Id. Final judgment was entered in the District Court on February 26, 2007, and this timely appeal followed.

On appeal, Jones argues that the District Court erred in concluding that she had opted out of the class. Jones further argues that because she did not opt out, the District Court violated her due process rights by failing to consider her objections to the Settlement Agreement.

McReynolds claims that the Settlement Agreement provides inadequate notice; that the Settlement Agreement is not fair, adequate, or reasonable; that the Settlement Agreement is deficient in that it fails to provide monetary relief to all class members, as sought in plaintiffs' complaint; and that the Settlement Agreement's general release provision is ambiguous.

Both PUC and named plaintiffs-appellees argue that the District Court neither erred in finding that Jones opted out of the class, nor abused its discretion in removing her as a class representative. They contended that Jones' claims for injunctive relief became moot by virtue of the New York State Family Court order terminating Jones' parental rights. PUC asserts that because Jones did not have any parental rights at the time of the fairness hearing, she lacked

standing to object to the Settlement Agreement, and, even if the District Court erred in finding that she had opted out, that error was harmless because her claims for declaratory and injunctive relief have become moot. Defendants-appellees also claim that remand to the District Court for failing to consider Jones' objections would be futile because her objections were raised by other class members. As to the adequacy of the Settlement Agreement, PUC contends that the notice and terms of the settlement were adequate, fair, and reasonable.

**ANALYSIS**

I.      Standard of Review

We generally review a district court's factual findings relating to a settlement agreement in a class action lawsuit under the clearly erroneous standard of review. Omega Eng'g, Inc. v. Omega, S.A., 432 F.3d 437, 443 (2d Cir. 2005). A district court's determination that a settlement in a class action lawsuit is "fair, reasonable, and adequate," however, is reviewed for abuse of discretion. See, e.g., Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1078 (2d Cir. 1995); County of Suffolk v. Long Island Lighting Co., 907 F.2d 1295, 1322–23 (2d Cir. 1990). To the extent a district court's decision rests on an interpretation of law, our review is de novo. See Omega Eng'g, Inc., 432 F.3d at 443; Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., 396 F.3d 96, 106 n.12 (2d Cir. 2005).

II.      Whether Jones Opted Out

The right of a class member to opt-out in Rule 23(b)(1) and (b)(2) actions is not obvious on the face of the rule; however, "the language of Rule 23 is sufficiently flexible to afford district courts discretion to grant opt-out rights in (b)(1) and (b)(2) class actions." Eubanks v. Billington, 110 F.3d 87, 94 (D.C. Cir. 1997); see also Penson v. Terminal Transp. Co., Inc., 634 F.2d 989,

993 (5th Cir. 1981) ("[A]lthough a member of a class certified under Rule 23(b)(2) has no absolute right to opt out of the class, a district court may mandate such a right pursuant to its discretionary power under Rule 23."); accord Long Island Lighting Co., 907 F.2d at 1304–05. Where, as here, the right to opt out in a Rule 23(b)(2) class action is permitted by the court, we have noted that class members may exercise that right by "[a]ny reasonable indication of a desire to opt out [of the class action lawsuit]." Plummer v. Chem. Bank, 668 F.2d 654, 657 n.2 (2d Cir. 1982). In this regard, however, a mere objection to a proposed settlement cannot necessarily be deemed a "reasonable indication of a desire to opt out" of the class action. Id. Rule 23(e)(5) provides a separate right of class members to object to a settlement proposal, and there is no authority for the questionable proposition that an automatic "opt-out" occurs by filing or raising an objection. See Fed. R. Civ. P. 23(e)(5).

Here, following a colloquy with Jones at the fairness hearing, the District Court concluded that Jones elected to opt out of the class action. In response to this finding, Jones informed the District Court that she had "not opted out . . . . I merely objected." Jones asserted that she had a right to object to the Settlement Agreement under the "rules" and explained to the District Court that her actions were "perfectly legal." Despite Jones' clear indication that she did not intend to opt out of the class action and her invocation of her right to object under the "rules," the District Court nevertheless found that Jones had opted out of the class because she "can't have it both ways." In so finding, the District Court erred in two ways: first, the finding that Jones elected to opt out of the class action was a clearly erroneous finding of fact; and, second, the court's conclusion that Jones opted out of the class by reason of her objection to the class settlement was an error of law.

Notwithstanding the District Court's errors, the appellees argue that remand would be futile. The appellees contend that every objection raised by Jones had been raised by other members of the class, and, therefore, the District Court had considered Jones' objections in full in any event.[4] In response, Jones argues that two of her objections were not raised by other class members, namely, (1) that the Notice was not provided in the Spanish language, and (2) that despite being a class representative, she did not have an opportunity to participate in the settlement negotiations.

Jones' objection that the notice of the Settlement Agreement "needed to be published in more than one language, because some [class members] are Latinos," however, was made by another class member, who stated at the fairness hearing that a "large population of black people who [are] Latinos don't know about [the Notice]." The class member also argued at the fairness hearing that "most of the people affected have no idea of" the class action and that notice should have been published in the "India Preza" publication as well. Thus, the objection that the notice "needed to be published in more than one language" was adequately presented before the District

---

[4] The appellees also contend that Jones' claims are moot. Because Jones had lost parental rights over her children during the pendency of the class action, appellees reason, Jones' claims for relief were moot and she therefore lacked standing to object: "Ms. Jones no longer has any children subject to ACS' jurisdiction, there is no possibility that ACS' policies will ever infringe on Ms. Jones' now non-existent parental rights, and the newly implemented procedures in the settlement will not affect Ms. Jones." This argument, however, fails to recognize that Jones has also maintained a claim for damages arising from past violations. See, e.g., Beyah v. Coughlin, 789 F.2d 986, 988–89 (2d Cir. 1986). Because Jones also sought compensatory damages, the termination of parental rights, by itself, did not render Jones' interest in the class action lawsuit moot. Cf. Martens v. Thomann, 273 F.3d 159, 173 n.10 (2d Cir. 2001) ("Although, upon certification of a class, the class representative must have individual standing, class representatives may continue to represent a class even if their individual claims become moot." (citation omitted)). Jones, as a class member and representative, was entitled to continued standing as a member of the class.

Court through objections concerning the issue of notice generally and, specifically, notice to Latinos.

With respect to Jones' objection that she had "no hand in the settlement . . . [or that she] was not given the opportunity to contribute," this objection amounts to a challenge to the fairness of the process of negotiating the Settlement Agreement — an issue that had also been raised by other class members. For example, McReynolds' written objection states, "[c]lass members have received inadequate representation in the settlement and settlement approval process as evidenced by the unfair and 'disparate distribution [of the incentive awards].'" McReynolds' written objection elaborates:

> Plaintiffs' counsel, Joan Gibbs, has violated the rules governing professional conduct by wearing two (2) hats in this adversarial proceeding; advocating on behalf of defendants, failing to take remedial measures regarding fraudulent conduct, including disclosure to the tribunal, knowingly making false statements to plaintiffs, failing to keep plaintiffs[] informed, failing to act with reasonable diligence and promptness in representing plaintiffs, failing to expedite litigation consistent with the interests of the classes, failing to promptly provide accurate information, failing to reasonably consult with clients, failing to protect plaintiffs' interests, failing to fairly and adequately represent the interests of the various classes, and failing to obtain informed and voluntary consent to the Proposed Settlement.

Although Jones' objection that she, personally, should have been permitted to contribute to the settlement negotiations is different from McReynolds' objection that there was inadequate representation in the settlement process, both objections contest the fairness of the settlement process by challenging either the authority or the adequacy of class counsel to conduct settlement negotiations on behalf of the class members. Moreover, Jones gave no compelling reasons why she, as a named plaintiff, should be directly involved in settlement negotiations despite adequate representation of the class by counsel. See Maywalt v. Parker & Parsley Petroleum Co., 864 F.

-17-

Supp. 1422, 1430 (S.D.N.Y. 1994) ("To empower the Class Representatives with what would amount to an automatic veto over the Proposed Settlement does not appear to serve the best interests of Rule 23 and would merely encourage strategic behavior 'designed to maximize the value of the veto rather than the settlement value of their claims.'" (quoting In re Ivan F. Boesky Sec. Litig., 948 F.2d 1358, 1366 (2d Cir. 1991)). "Compelling defendants to negotiate with a single negotiator authorized to speak for all the classes eliminates opportunities for divisive settlement shopping and promotes fair and comprehensive resolutions. It also diminishes the costs that multilateral bargaining would impose upon each class." In re Ivan F. Boesky Sec. Litig., 948 F.2d at 1365; see also Maywalt, 864 F. Supp. at 1430 ("[T]he duty owed by class counsel is to the entire class and not dependent on the special desires of the named plaintiffs. . . . [T]he named plaintiffs should not be permitted to hold the absentee class hostage by refusing to assent to an otherwise fair and adequate settlement in order to secure their individual demands." (internal quotation marks omitted)). Having in mind the concerns just articulated, we cannot say that Jones' objection to the issue of fairness in negotiating the Settlement Agreement was materially different from any other class member's objection such that it was not adequately presented to the District Court and addressed by its ruling.

Because the District Court addressed all of Jones' objections as to adequacy of notice and her ability to participate in negotiations, Jones was not prejudiced insofar as she claims that these specific objections were overlooked by the District Court. Any error in the court's determination that Jones had opted out of the class was therefore harmless. Having so concluded, however, we think that remand is required because there is need for clarification in the Settlement Agreement as to whether individual claims for damages may still be pursued following approval of the

-18-

Settlement Agreement. Although the parties to the Settlement Agreement assured the District Court that individual plaintiffs could pursue damages, it is not at all clear that this is so. In this regard, the Settlement Agreement's release provision specifies the following:

> Plaintiffs, . . . <u>release the [defendants]</u> and their successors in interest, and any and all present and former officials, employees or agents of the City of New York and Children's Services . . . <u>from all rights of action, proceedings, claims and liability, connected with, related to or arising out of claims and causes of action set forth in the complaint</u> in the above-captioned proceeding with the exception of any claims for attorneys' fees described in paragraph "14."

(emphasis added).

As evident from the plain language of the release provision, the Settlement Agreement releases <u>all</u> claims set forth in the plaintiffs' complaint — which specifically included claims for compensatory damages — against the defendants. See Goldman v. C.I.R., 39 F.3d 402, 405–06 (2d Cir. 1994) ("As the settlement agreement constituted a contract, general principles of contract law . . . dictate that where the language of a contract is unambiguous, its meaning must be determined from the four corners of the instrument without resort to extrinsic evidence of any nature." (internal citations and quotation marks omitted)).

The appellees contend that a separate provision of the Settlement Agreement, paragraph 11, demonstrates <u>by implication</u> that the plaintiffs have a right to pursue a separate action for damages. Paragraph 11 provides: "[t]his Stipulation shall not be admissible in, nor is it related to, actions for damages brought by any individual, or to any other litigation or settlement negotiations." To read paragraph 11 as an implied right of action for damages, however, would well-nigh render meaningless the release provision's condition that the appellees be released from "all rights of action, proceedings, claims and liability, connected with, related to or arising

-19-

out of claims and causes of action set forth in the complaint." Rather, paragraph 11 simply requires that the settlement shall not be admissible in "any other" action for damages, i.e., actions that do not arise from the principal facts of the class action complaint. Moreover, paragraph 11 specifically governs the admissibility of evidence and cannot necessarily be read to modify the substantive scope of the release provision.

The broad terms of the release provision are therefore inconsistent with the parties' stated and undisputed intent to release only the class members' claims for injunctive relief against the defendants. On remand, the District Court is directed to require the parties to clarify the language of the release provision in order to reflect their stated understanding that plaintiffs are allowed to pursue subsequent actions for damages.

III.     Other Considerations Relating to the Approval of Settlement

As the District Court stated, Federal Rule of Civil Procedure 23(e)(2) provides that "the court may approve [the] settlement . . . only after a hearing and on finding that the settlement . . . is fair, reasonable, and adequate." Cent. States S.E. and S.W. Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C., 504 F.3d 229, 247 (2d Cir. 2007) (internal quotation marks omitted). We have recognized a presumption of fairness, reasonableness, and adequacy as to the settlement where "a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery." Wal-Mart Stores, Inc., 396 F.3d at 116 (internal quotation marks omitted). Such a presumption is consistent with the "strong judicial policy in favor of settlements, particularly in the class action context." Id. (internal quotation marks omitted)). "This Court will disturb a judicially-approved [class action] settlement" only when there is a clear showing that the District Court abused its discretion.

D'Amato v. Deutsche Bank, 236 F.3d 78, 85 (2d Cir. 2001).

In determining whether a settlement is fair, reasonable, and adequate, the District Court examines the "negotiating process leading up to the settlement[, i.e., procedural fairness,] as well as the settlement's substantive terms[, i.e., substantive fairness]." Id. With respect to procedural fairness, we have stated that a District Court reviewing a proposed settlement "must pay close attention to the negotiating process, to ensure that the settlement resulted from arm's-length negotiations and that plaintiffs' counsel . . . possessed the [necessary] experience and ability, and have engaged in the discovery, necessary to effective representation of the class's interests." Id. (internal quotation marks omitted). Here, as the District Court reasonably found, there was "no question that the Settlement is the product of arms-length, good faith negotiation." People United for Children, 2007 WL 582720, at *3. In this regard, that the negotiating parties excluded Jones from receiving an incentive award does not prove otherwise.[5] As the court noted, the negotiations between the parties were extended over a two-year period, substantial discovery had been completed, class members were given the opportunity to object to the terms of the Settlement Agreement, and, primarily because class counsel left the issue of attorney's fees to the discretion of the District Court, there was "no indication that the Settlement was the product of bad faith or collusion." Id. The extended and transparent negotiations involved in this case were sufficient evidence for the District Court to conclude that the settlement process was procedurally fair.

In evaluating substantive fairness, it is well settled that the District Court must consider

---

[5] Moreover, Jones forfeited her claim to such an incentive award by not specifically raising it in her objections to the settlement.

the nine Grinnell factors:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

City of Detroit v. Grinnell Corp., 495 F.2d 448, 463 (2d Cir. 1974) (internal citations omitted), abrogated on other grounds by Goldberger v. Integrated Res., Inc., 209 F.3d 43 (2d Cir. 2000); see also Wal-Mart Stores, Inc., 396 F.3d at 117. The District Court expressly considered the Grinnell factors in this case, and we discern no error in the District Court's determination that "not a single Grinnell factor . . . weighs against approving the Settlement." People United for Children, 2007 WL 582720, at *4.

Finally, with respect to issues concerning notice in this case, the rule governing the notice requirement provides that "[f]or any class certified under [Rule 23(b)(2)], the court may direct appropriate notice to the class." Fed. R. Civ. P. 23(c)(2)(A) (emphasis added). We have explained that "'[t]he notice must be of such nature as reasonably to convey the required information . . . and it must afford a reasonable time for those interested to make their appearance.'" Soberal-Perez v. Heckler, 717 F.2d 36, 43 (2d Cir. 1983) (quoting Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314 (1950)). The District Court did not abuse its discretion in approving the form and method of the notice in this case or in finding that "the defendants fully complied with the notice procedures as put forth in the order dated October 20,

2005."[6] People United for Children, 2007 WL 582720, at *3.

**CONCLUSION**

For the reasons stated herein, we AFFIRM the judgment of the District Court, but we REMAND the case to the District Court for the limited purpose of requiring the parties to modify the release provision to reflect their stated and undisputed intent that the provision does not preclude the plaintiffs from pursuing an action for damages against the defendants.

---

[6] Jones' challenge to the Notice, as explained above, involves the lack of notice to Spanish-speaking class members. However, there is no evidence in the record to support the objection. See Maywalt, 864 F. Supp. at 1430 ("[A]n objection based on an assertion or argument not readily supportable at trial should not be permitted to bar settlement."); cf. In re Visa Check/Mastermoney Antitrust Litig., 297 F. Supp. 2d 503, 517 (E.D.N.Y. 2003) (finding that because "[t]he basic standard is one of reasonableness," the argument that Hispanic merchants are "less comfortable with English than they are with Spanish" did not demonstrate "a significant defect in the notice" and "does not rise to the level of a due process violation"). We note, moreover, the District Court's April 21, 2003 order certifying the class states that "the statistical reports and anecdotal evidence appear to support the inference that there is an aggrieved class of African-American or black parents" over Latino and white parents.

-23-