In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 14-3436

DENNIS ADKINS, *et al.*,

*Plaintiffs-Appellees,*

*and*

CONNIE CURTS,

*Intervening Plaintiff-Appellant,*

*v.*

NESTLÉ PURINA PETCARE COMPANY and WAGGIN' TRAIN, LLC,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 2871 — **Robert W. Gettleman**, *Judge.*

---

ARGUED FEBRUARY 24, 2015 — DECIDED MARCH 2, 2015

---

Before EASTERBROOK, ROVNER, and SYKES, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Plaintiffs contend in this suit, which the district court has certified as a nationwide class action, that Nestlé and Waggin' Train sold dog treats that injured the dogs. The parties have reached a settlement, to

which the district court has given tentative approval pending a fairness hearing under Fed. R. Civ. P. 23(e). That hearing has been scheduled for June 23, 2015. The order tentatively approving the settlement has one non-tentative provision: It enjoins all class members from prosecuting litigation about the dog treats in any other forum.

One case affected by this injunction has been pending for two years in Missouri, and it was certified as a statewide class action before the federal suit was certified as a national class action. It was on a schedule leading to a trial in May 2015 when the injunction stopped it cold. Connie Curts, the certified representative of the Missouri class, intervened to protest the federal injunction.[†] She contends in this appeal that the district court has violated 28 U.S.C. §2283, the Anti-Injunction Act, which provides: "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The parties (the representatives of the federal class plus Nestlé and Waggin' Train) contend that the injunction is "necessary in aid of [the district court's] jurisdiction". Curts

---

[†] At least she tried to intervene. The district judge denied the motion with a brief oral statement. We have directed district courts to allow intervention under circumstances such as these. See, e.g., *Crawford v. Equifax Payment Services, Inc.*, 201 F.3d 877, 881 (7th Cir. 2000); *Robert F. Booth Trust v. Crowley*, 687 F.3d 314 (7th Cir. 2012). The district court did not mention either of these decisions (or any other case, for that matter). Still, the error is not fatal, given *Devlin v. Scardelletti*, 536 U.S. 1 (2002), and *United States v. Kirschenbaum*, 156 F.3d 784, 794 (7th Cir. 1998) (a nonparty bound by an injunction is entitled to appeal).

maintains, to the contrary, that only federal actions *in rem*—that is, suits about the disposition of specific property—come within the scope of the "aid of jurisdiction" exception, because only then could a state court's action override the federal tribunal by moving or destroying the property on which federal authority depends.

But when we sought to learn the district court's view of this subject, we were stymied. The district judge has not explained why he entered the injunction. There are some hints, but nothing more. That won't do. Rule 65(d)(1)(A) of the Federal Rules of Civil Procedure provides that every order issuing an injunction must "state the reasons why it issued".

At oral argument, counsel for Nestlé insisted that the judge had provided reasons and referred us to six pages of the transcript of a hearing at which the settlement was discussed. According to counsel, the district judge found that continuation of the Missouri action "has a great potential of tanking the entire settlement". We'll return to the question whether this has anything to do with "jurisdiction." For the moment, it is enough to observe that Nestlé's lawyer was quoting a statement by Morton Denlow, a retired magistrate judge who in a private capacity had mediated the negotiations, not a statement by the district judge.

And if we understand the judge as sharing Mr. Denlow's view, that would not satisfy Rule 65(d)(1)(A). Before issuing an injunction, a judge must identify the appropriate legal standard and make the findings of law and fact required by that standard. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor,

and that an injunction is in the public interest." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

The district judge did not discuss these subjects, and although Mr. Denlow's statement may be relevant it is not conclusive on any of them. Take irreparable injury: It is established that the costs of ongoing litigation (the result if the settlement collapses) are not irreparable injury. See, e.g., *Petroleum Exploration, Inc. v. Public Service Commission*, 304 U.S. 209, 222 (1938); *Renegotiation Board v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974); *FTC v. Standard Oil Co.*, 449 U.S. 232, 244 (1980). More: an injunction that halts state litigation is permissible only if it satisfies §2283 in addition to the traditional factors that *Winter* catalogs. The district judge was silent about everything that matters.

The immediate question we must resolve, therefore, is whether to vacate the injunction and remand for further proceedings, or to reverse outright. We think the latter step appropriate, for two reasons: first, the final hearing is scheduled for June, and further proceedings in the district court (potentially followed by another appeal) could leave the state litigation in limbo until then, disrupting the state case almost as effectively as an injunction; second, in supporting this injunction the parties do not even *contend* that it is "necessary" in aid of the district court's "jurisdiction." Instead the parties contend that, if the Missouri case proceeds to final decision before June 23, then their settlement must be renegotiated and may well collapse. We take that as a given. Still, what has that to do with the federal court's "jurisdiction"? And why is preserving a particular settlement "necessary" to federal jurisdiction?

Many decisions by the Supreme Court over the last 30 years tell us that "jurisdiction" means adjudicatory competence. See, e.g., *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010); *Union Pacific R.R. v. Brotherhood of Locomotive Engineers*, 558 U.S. 67 (2009); *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385 (1982). See also *Minn-Chem, Inc. v. Agrium Inc.*, 683 F.3d 845 (7th Cir. 2012) (en banc). These opinions show that there is a fundamental difference between "jurisdiction" and the many procedural or substantive rules that determine how cases are resolved. A court has "jurisdiction" when it has been designated by statute as an appropriate forum for a dispute of a given sort; other rules are non-jurisdictional.

No one doubts that the district court has subject-matter jurisdiction over this litigation, and no one contends that trial or judgment in the Missouri litigation could imperil the district court's ability and authority to adjudicate the federal suit. If the settlement collapses, the court's adjudicatory competence remains. A need to adjudicate a suit on the merits after settlement negotiations fail does not undermine the nature or extent of a court's jurisdiction. Yet if the Missouri case cannot diminish federal jurisdiction, §2283 precludes an injunction until the federal case reaches a final decision. (After a final decision, an injunction could be appropriate to protect the federal judgment, although class members who opt out would remain entitled to pursue their own suits.)

Parallel state and federal litigation is common. The first to reach final decision can affect the other, either through rules of claim and issue preclusion (res judicata and collateral estoppel) or through effects such as reducing the scope of a class from 50 to 49 states. Yet the potential effect of one suit on the other does not justify an injunction.

We have never viewed parallel *in personam* actions as interfering with the jurisdiction of either court; as we stated in *Kline v. Burke Construction Co.*, 260 U.S. 226 (1922):

> [A]n action brought to enforce [a personal liability] *does not tend to impair or defeat the jurisdiction* of the court in which a prior action for the same cause is pending. Each court is free to proceed in its own way and in its own time, without reference to the proceedings in the other court. Whenever a judgment is rendered in one of the courts and pleaded in the other, the effect of that judgment is to be determined by the application of the principles of *res adjudicata … ." Id.*, at 230 (emphasis added).

> No case of this Court has ever held that an injunction to "preserve" a case or controversy fits within the "necessary in aid of its jurisdiction" exception [to §2283]; neither have the parties directed us to any other federal-court decisions so holding.

*Vendo Co. v. Lektro-Vend Corp.*, 433 U.S. 623, 642 (1977) (plurality opinion). More recently, *Sprint Communications, Inc. v. Jacobs*, 134 S. Ct. 584 (2013), held that parallel state and federal proceedings do not justify abstention by a federal court. The Court thought that both should be allowed to proceed, subject only to the equitable power of each tribunal to defer its own proceedings in deference to a case that is farther along. Nothing in *Sprint* or any other decision of the Supreme Court suggests that the court presiding over the case likely to reach judgment second can jump the queue by enjoining the suit that is likely to reach decision first. Our opinion in *Zurich American Insurance Co. v. Superior Court of California*, 326 F.3d 816, 825–27 (7th Cir. 2002), dealt with just such a situation and held that the prospect of a state court reaching decision first, making federal decision unnecessary (or the federal case harder to adjudicate), does not justify a federal injunction against the state litigation.

We therefore need not address Curts's argument that only *in rem* proceedings can satisfy the "aid of jurisdiction" clause in §2283. We can imagine extreme situations in which a state could imperil a federal court's adjudicatory power over *in personam* actions. For example, suppose a state court were to bar a necessary witness from attending a federal trial or deposition; a federal injunction (or a writ of habeas corpus) might be an authorized response. *Winkler v. Eli Lilly & Co.*, 101 F.3d 1196, 1202 (7th Cir. 1996), concludes that the "aid of jurisdiction" clause may be invoked when an inconsistent decision by a state court would "render the exercise of the federal court's jurisdiction nugatory."

The panel in *Winkler* thought that this might occur when the federal litigation sought an injunction (as in school desegregation litigation); an order by the state court to do something different from what the federal litigation sought could undermine federal authority as a practical matter. (*Winkler* itself entailed incompatible state and federal orders about discovery management.) But nothing of the sort has occurred here. Curts wants to litigate her own suit in Missouri, not to stop the federal court from adjudicating the suit pending before it, and the parties do not contend that there is a significant prospect of inconsistent injunctions affecting defendants' future conduct. (Should that possibility be realized, it can be dealt with.)

No matter what one makes of the word "jurisdiction" in §2283, an injunction is proper only when "necessary" to protect federal jurisdiction. The parties argue that closing down the Missouri case would be prudent, beneficial, helpful, and so on; the unstated premise is that §2283 allows whatever a federal court thinks is good litigation management. But

that's not what "necessary" means. The Supreme Court told us recently:

> The statute … "is a necessary concomitant of the Framers' decision to authorize, and Congress' decision to implement, a dual system of federal and state courts." And the Act's core message is one of respect for state courts. The Act broadly commands that those tribunals "shall remain free from interference by federal courts." That edict is subject to only "three specifically defined exceptions." And those exceptions, though designed for important purposes, "are narrow and are 'not [to] be enlarged by loose statutory construction.'" Indeed, "[a]ny doubts as to the propriety of a federal injunction against state court proceedings should be resolved in favor of permitting the state courts to proceed."

*Smith v. Bayer Corp.*, 131 S. Ct. 2368, 2375 (2011) (internal citations omitted). One reason why doubts must be resolved against a federal injunction is the word "necessary". Section 2283 leaves only limited opportunities for federal intervention. In the main §2283 commits to the *state* court the question whether it would be prudent, beneficial, or helpful to let the federal case go first.

According to the parties, *In re VMS Securities Litigation*, 103 F.3d 1317 (7th Cir. 1996), shows that the district court's injunction is proper. Not at all. In *VMS Securities* the district court issued an injunction to protect the final decision in a class suit. That step was authorized by the relitigation exception to §2283. What is more, the parties had failed to raise §2283 in the district court, and we held that this forfeited any entitlement to rely on it in the court of appeals. 103 F.3d at 1326. Nothing in *VMS Securities* supports the propriety of an injunction while the federal case remains in process.

Although the parties and Curts debate the significance of many decisions outside the Seventh Circuit, those opinions are so various that it would not be helpful to catalog them. It is enough to say that, to the extent any of them supports injunctive relief before the settlement of a federal class action has become final, it fails to discuss the Supreme Court's understanding of "jurisdiction" and predates its reminder in *Bayer* that doubts must be resolved in favor of allowing state courts to proceed with litigation pending there.

Curts and the parties have locked horns on a number of additional questions, such as whether it is appropriate to certify a national class (as opposed to a number of state-specific classes), whether the plaintiffs are adequate representatives of a national class, and whether the settlement ought to be approved. Our jurisdiction under 28 U.S.C. §1292(a) is limited to the injunction, however. Whatever scope remains for pendent appellate jurisdiction after *Swint v. Chambers County Comm'n*, 514 U.S. 35, 43–51 (1995), and *Clinton v. Jones*, 520 U.S. 681, 707 n.41 (1997), this is not an appropriate occasion for its exercise. Disputes about class certification and the terms of the settlement are independent of the injunction against state litigation. Anyone dissatisfied with the district court's final disposition is free to seek appellate review; we will not try to resolve issues still under consideration in the district court.

Effective immediately, the district court's injunction is stayed. Curts and the Missouri court are free to proceed. But our mandate will issue in the ordinary course, to preserve the parties' entitlement to seek rehearing.

REVERSED