In the

# United States Court of Appeals
## For the Seventh Circuit

———————————

No. 20-1821

IN THE MATTER OF:

NAVISTAR MAXXFORCE ENGINES MARKETING, SALES PRACTICES, AND PRODUCTS LIABILITY LITIGATION

APPEAL OF:

DRASC, INC., and S&C TRUCKS OF WINKLEPLECK, LTD.

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:14-cv-10318 — **Joan B. Gottschall**, *Judge*.

———————————

ARGUED NOVEMBER 2, 2020 — DECIDED MARCH 11, 2021

———————————

Before SYKES, *Chief Judge*, and EASTERBROOK and WOOD, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. A class of owners accused Navistar of selling trucks with defective engines. The suit was settled for $135 million, and in June 2019 the district court gave its preliminary approval. Before the approval could become final, the court had to notify class members of their right to opt out, and it needed to consider any substan-

tive objections by class members who elected to be bound by
the settlement. Fed. R. Civ. P. 23(e). On August 9, 2019, a
court-approved notice was sent by first-class mail to all class
members describing the claims, the scope of the suit, the
terms of the settlement, and the option to litigate inde-
pendently. Paragraph 29 of the district court's order reads:

> Class Members who wish to exclude themselves from (i.e., opt
> out of) the Settlement must sent [sic] an [sic] request to opt-out
> that: (1) includes the Class Member's full name, address, and tel-
> ephone number; (2) identifies the model, model year, and VIN of
> the Class Member's Class Vehicle(s); (3) explicitly and unambig-
> uously state his, her, or its desire to be excluded from the Settle-
> ment Class in *In re Navistar MaxxForce Engines Marketing, Sales
> Practices and Products Liability Litigation*; and (4) be individually
> and personally signed by the Class Member. If the Class Member
> is an entity and not an individual, the opt-out must be signed by
> an officer or director of the entity and include an affidavit that
> attests to that person's ability to act on behalf of that entity. All
> Opt Outs must be submitted no later than sixty (60) calendar
> days after the Notice Date, a total of one hundred and twenty
> (120) calendar days from the date of this Order. Class Members
> who submit a timely Opt Out will be excluded from the Settle-
> ment, will not receive any benefit, and will not release any
> claims. All Class Members who do not Opt Out in accordance
> with the terms of this Order, the Settlement, and the instructions
> set forth in the Settlement and this Order, shall be bound by all
> determinations and judgments concerning the Settlement.

The parallel provision in the instructions sent to class mem-
bers was simpler: "You can file a claim by May 11, 2020, ex-
clude yourself by October 10, 2019, or object to the Settle-
ment by October 10, 2019." The instructions included a link
to a website with the full opt-out details and a phone num-
ber to call for people who wanted to get the details orally.

The court held a fairness hearing on November 13 and rejected some class members' objections to the settlement. On January 21, 2020, it entered a final judgment implementing the settlement. That ended the litigation.

Or not. Two members of the class (collectively Drasc) had sued Navistar in Ohio concerning the engines of Navistar's trucks. The federal court declined to enjoin parallel suits in state court, see *Adkins v. Nestlé Purina PetCare Co.*, 779 F.3d 481 (7th Cir. 2015), so the Ohio case proceeded while the federal action was pending. After the district court approved the settlement, however, Navistar's lawyers notified Drasc's counsel that its suit is barred by the release in the settlement and final judgment. Drasc concedes that this is so but maintains that it should not be bound. It argues, first, that it never received notice of the settlement and need to opt out and, second, that its effort to continue litigating in Ohio should be deemed a "reasonable indication" of a desire to opt out.

The district court permitted Drasc to intervene in order to present its belated argument for exclusion from the class. After receiving evidence, the court made several findings:

- Two first-class letters had been sent to Drasc at its business addresses.

- Drasc concedes that the envelopes were addressed properly but says that its files do not contain the letters—and its president says that he does not remember receiving them—but mailing is evidence of receipt, see *Hagner v. United States*, 285 U.S. 427, 430 (1932), and a disclaimer of memory does not refute receipt.

- Drasc had been given an opportunity to provide an email address to Navistar for notice and had chosen not to do so. (Class members who provided email addresses received notice that way in addition to postal mail.)

- Drasc's lawyers in the Ohio suit had actual notice of the settlement. They had sent a letter to Navistar's counsel the day after the preliminary hearing on the settlement (May 30, 2019), showing awareness of the pending class action. And a settlement demand that Drasc's lawyers sent to Navistar on July 26, 2019, discusses the difference between what Drasc wanted in the Ohio case and what it expected to receive from the class-action settlement.

- Drasc's lawyers must have known about the need to opt out. No modern lawyer is unaware of the procedures for managing class actions. Nonetheless, Drasc's lawyers did not do anything to protect its interest in opting out.

- Because Drasc had actual knowledge (through the letters and counsel) of the need to opt out, it could not show excusable neglect that would justify an extension of the opt-out deadline.

None of these findings is clearly erroneous. Still, Drasc insists that notice by first-class mail is insufficient under the Due Process Clause of the Fifth Amendment.

That's a hard line of argument to pursue, given *Dusenbery v. United States*, 534 U.S. 161 (2002), which holds that mail (to the correct address) satisfies the constitutional requirement that notice be reasonably calculated to give actual

knowledge. If the Postal Service returns mail unclaimed, some other form of notice may be necessary. See *Jones v. Flowers*, 547 U.S. 220 (2006). But the district judge found that neither of the letters sent to Drasc was returned. And the court's unchallenged finding that Drasc's lawyers in Ohio had actual knowledge of the litigation and its settlement eliminates any opportunity for Drasc to argue that mail must be certified rather than plain-vanilla first-class envelopes. A lawyer's knowledge is imputed to the client. Counsel also could have checked the docket of the class action, which they knew was pending, and would have found the opt-out notice. Its language is clear enough to tell even a layperson that someone who does not opt out will be "bound" by the settlement, which releases all claims against Navistar arising from engines subject to the federal litigation.

A district judge has discretion to permit an untimely opt out when the delay is excusable. See *Burns v. Elrod*, 757 F.2d 151, 155 (7th Cir. 1985) (citing *Zients v. LaMorte*, 459 F.2d 628 (2d Cir. 1972)). The district judge did not abuse her discretion in finding Drasc's delay inexcusable. Counsel's actual knowledge of the settlement is conclusive. The district judge suspected that Drasc was trying to achieve the benefits of one-way intervention: to take the greater of the class-action settlement or the result in Ohio. That used to be permissible but has not been allowed since the 1966 amendments to Rule 23. See *Premier Electrical Construction Co. v. National Electrical Contractors Ass'n, Inc.*, 814 F.2d 358, 362–63 (7th Cir. 1987). Class members must make an irrevocable choice: take their share of whatever the class receives, or take the outcome of a separate suit. To allow both is to provide a litigant with more than the suit's actuarial value. (To see this, suppose that a class member's claim has a 50% chance of success and

will produce damages of $10,000. An actuarially fair settlement through the class, or stand-alone litigation, would be worth $5,000. But if the litigant can go for broke in a separate suit, getting either $0 or $10,000, and fall back on the class settlement if it loses, the combined value of those two options is $7,500.)

Nonetheless, Drasc insists, its continued litigation in Ohio should have been deemed enough to show that it wanted to opt out. It asks us to adopt a rule under which any "reasonable indication" of a desire to exclude oneself from the class should suffice. This is a possibility that we have mentioned before but not adopted. See *Sanders v. John Nuveen & Co., Inc.*, 524 F.2d 1064, 1075 (7th Cir. 1975). We do not adopt it today, either.

If all a class member had to go on were the language of Rule 23(c)(2)(B)(v), which provides "that the court will exclude from the class any member who requests exclusion", a judge should be flexible about how the "request" is made. The Rule's lack of specificity was the genesis of the "reasonable indication" approach, which stems from an observation that a treatise made almost 50 years ago, long before district courts began to enter precise orders such as ¶29.

Wright & Miller stated in 1972 that "considerable flexibility is desirable in determining what constitutes an effective expression of a class member's desire to exclude himself and any written evidence of it should suffice." Charles Alan Wright & Arthur R. Miller, 7A *Federal Practice & Procedure* §1787 (1972) (now 7AA *Federal Practice & Procedure Civil* §1787 (3d ed.)). The "reasonable indication" language comes from the Tenth Circuit's adoption of Wright & Miller's standard. *In re Four Seasons Securities Laws Litigation*, 493 F.2d

1288, 1291 (10th Cir. 1974) ("A reasonable indication of a de-sire to opt out ought to be sufficient."). The Tenth Circuit held that a district court did not abuse its discretion by find-ing that a class member effectively opted out in a letter to the Trustee for Four Seasons, rather than to the clerk of court as the notice had directed. The Tenth Circuit quoted and relied on Wright & Miller: "As the authors of the treatise cited above indicate, flexibility is desirable in determining what constitutes an expression of a class member's desire to ex-clude himself and any written evidence of it ought to be sufficient." *Ibid*. The Tenth Circuit did not hold that a district judge *must* accept an opt-out letter sent to the wrong person, only that it could do so.

The Second Circuit picked up the "reasonable indication" language in *Plummer v. Chemical Bank*, 668 F.2d 654 (2d Cir. 1982). See also *McReynolds v. Richards-Cantave*, 588 F.3d 790, 800 (2d Cir. 2009). *Plummer* observed that "we find nothing in Rule 23 which requires them to file written reasons for their exercise of choice. Any reasonable indication of a desire to opt out should suffice." 668 F.2d at 657 n.2. And that ob-servation about Rule 23 is beyond question. Neither *Plummer* nor *McReynolds* asks whether a district court can issue a more precise direction and insist that it be followed.

That is the end of the trail. No other circuit has adopted "reasonable indication" as a legal standard, and at least one circuit—see *In re Deepwater Horizon*, 819 F.3d 190, 196–98 (5th Cir. 2016)—has joined *Sanders* in reserving judgment.

We agree with the Tenth and Second Circuits that, when a district court has not issued instructions about how to opt out, the judge is free to accept as adequate any "reasonable indication" of such a desire. Our problem is different: Must a

judge who has specified in excruciating detail how opting out is to be accomplished accept some different means? To that question the answer must be no.

One reason is that any approach that avoids the need for a clear choice preserves the option of one-way intervention. Suppose that Drasc had gone to trial in Ohio, lost, and then claimed a share of the class-action settlement, asserting that its lack of a formal opt-out notice means that it is entitled to that benefit. The possibility of having things both ways is foreclosed when courts stick to the rules they have established.

Another is that the "reasonable indication" approach could make class actions difficult if not impossible to administer. Classes may have thousands, even millions, of members. A clear rule established in something like ¶29 can be implemented mechanically by a claims administrator. A "reasonable indication" approach, by contrast, could pose dozens or hundreds of difficult questions for a judge. In response to Drasc's motion the district court took evidence, made findings, and wrote a 14-page opinion. Imagine that exercise a dozen or a hundred times over, each with slightly different facts asserted to show a "reasonable indication" that someone wanted to do something.

Courts have long resisted that sort of complication. To begin a lawsuit, someone must file a particular document (the complaint) in a particular place (the clerk's office) by a particular date (the statute of limitations). A "reasonable indication" of a desire to sue won't suffice. To appeal an adverse decision, the litigant must file a particular document (a notice of appeal) in a particular place (the clerk's office) by a particular time (Fed. R. App. P. 4). A "reasonable indication"

of a desire to appeal won't do. There may be questions about whether a document *is* a notice of appeal: the answer is yes, regardless of its caption, if it is filed in court and contains the information required by Fed. R. App. P. 3. See *Smith v. Barry*, 502 U.S. 244 (1992). But no judge would treat a letter from a litigant to his lawyer, or litigation in state court, as a notice of appeal in federal court. Similar examples abound.

Think about the problem of interpreting the actions by Drasc and its lawyers in the Ohio litigation. They served discovery requests and made settlement proposals that, they say, Navistar's lawyers should have understood as a desire to litigate independently. But Navistar insists that it saw these things only as the natural consequence of the district court's decision not to enjoin pending state suits, which then had to be pursued or be dismissed for want of prosecution. Navistar also could have seen the activity in Ohio as evincing Drasc's hope to get the higher of two possible remedies: its share of the class-action settlement or whatever it could persuade a jury to award in Ohio. Meanwhile none of the information from Ohio came to the attention of the claims administrator in the class action, which would have treated Drasc as a class member and cut a check unless something stopped that process. How is the judge supervising the federal proceedings supposed to interpret these events? There is no right way to do so, which implies that the judge is entitled to insist that class members follow the instructions they have been given and opt out (or not) in the formal way the district judge told them to use.

Following mechanical rules is the only sure way to handle suits with thousands of class members. This also helps the judge to know whether to approve the settlement as a

substantive matter. Without knowing who remains in, the judge could not decide whether $135 million is appropriate or perhaps should be reduced by opt-outs' claims, or treated as inadequate because class members had voted with their feet to disapprove the resolution. The district judge, having approved a detailed process in ¶29, was entitled to require the class members to do what they had been told or bear the consequences of inaction. This means that Drasc did not opt out, and its effort to litigate separately in Ohio is barred by the release in the settlement.

AFFIRMED